**In re Jason TAITE, Elaine
Taite, Debtors.**

**PEOPLE OF the STATE OF CALIFOR-
NIA, John K. Van de Kamp,
Attorney General, Plaintiffs,**

v.

**Jason TAITE, Elaine Taite, Defendants.**

**Bankruptcy No. LA 85–09892–LF.
Adv. No. LA 85–4076–LF.**

United States Bankruptcy Court,
C.D. California.

June 11, 1987.

John K. Van de Kamp, Atty. Gen., Michael R. Botwin, Deputy Atty. Gen., Los Angeles, Cal., for State of Calif.

Earle Hagen, Hagen & Hagen, Encino, Cal., for debtors.

## OPINION

LISA HILL FENNING, Bankruptcy Judge.

On July 18, 1985, Jason and Elaine Taite filed a joint Chapter 7 petition as husband and wife. They have since divorced. Their schedules list over $1,000,000 in disputed debts owed to the State of California as a result of state court judgments rendered in two related cases. The issue presented here is whether these debts are nondischargeable under 11 U.S.C. § 523(a)(2) or (a)(7). This Court concludes that all of these debts are nondischargeable as to Jason Taite; all but one are nondischargeable as to Elaine Taite.

## BACKGROUND

In 1977, the Attorney General began an investigation of consumer fraud allegations against Debtors, doing business as Custom Craft Carpets, Inc., a retail carpet operation. Jason Taite served as president and chairman of the board of directors. Elaine was corporate secretary, the only other officer or director. At various times, she ran the office operations of the business and acted as the receptionist. No one other than the Taites ever owned stock in Custom Craft Carpets, Inc.

Upon learning of the Attorney General's investigation, but prior to the filing of the complaint, Debtors' corporation sued the individual members of the Attorney General's office in *Custom Craft Carpets, Inc. v. Evell J. Younger,* Superior Court of Los Angeles County, Docket No. C 225751 (1979). The complaint alleged that defendants were continuing the investigation on the basis of fabricated evidence and with knowledge that the charges were false. The trial court granted summary judgment against Custom Craft. In affirming that decision, the court of appeal summarized the allegations as follows:

"Stripped of its conclusionary allegations and epithets, the complaint simply alleges that the deputy attorneys general and the deputy city attorney cooperated together in an inquiry into plaintiffs' [debtors] advertising and marketing practices. In the course of said inquiry, plaintiffs were invited to the office of the Attorney General and were advised that the deputies intended to file a civil action against the plaintiffs. Plaintiffs were offered a copy of a proposed civil complaint along with a proposed stipulated judgment which would provide for the payment of $50,000 in civil penalties and an injunction against engaging in certain proscribed practices in the future.

In short, the deputies advised plaintiffs of their intent to institute a civil action and proposed a settlement of the case. Plaintiffs then assert their innocence and allege in conclusionary fashion that deputy attorneys general and deputy city attorney, along with their employers, knew that the charges were false and were proceeding on fabricated evidence."

*Custom Craft Carpets, Inc. v. Miller,* 137 Cal.App.3d 120, 124, 187 Cal.Rptr. 78, 80–81 (1982).

The court of appeal found "that the entire matter was from trial level to the appellate level a sham designed to gain time for Custom Craft to continue its improper conduct." *Id.* at 123, 187 Cal.Rptr. at 79. In addition to the usual costs on appeal, the court penalized Debtors $10,000 ($5,000 to the State of California and $5,000 to the City of Los Angeles) for taking a frivolous

appeal. *Id.* at 123–124, 187 Cal.Rptr. at 79–80. These sanctions were awarded pursuant to California Rules of Court, Rule 26(a) which provides:

"Where the appeal is frivolous or taken solely for the purpose of delay or where any party shall have required in the typewritten or printed record on appeal the inclusion of any matter not reasonably material to the determination of the appeal, or has been guilty of any other unreasonable infraction of the rules governing appeals, the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require."

The Attorney General's investigation resulted in a civil action against Debtors, *People v. Custom Craft Carpets, Inc., Jason Taite, Elaine Taite, et al.,* Superior Court of Los Angeles County, Docket No. C226056 (1981). The complaint alleged violations of California Business and Professions Code Sections 17200 (unfair competition), 17500 (deceptive advertising), and 17508 (failing to substantiate advertising claims). After a three month trial, the superior court expressly found that Debtors:

"... engaged in unlawful, unfair, and fraudulent business practices in violation of Business and Professions Code section 17200, made untrue and misleading statements in violation of Business and Professions Code section 17500 and failed to substantiate certain advertising claims as required by Business and Professions Code section 17508 ..." *Id.* at 2.

After trial, the court issued a permanent injunction barring the use of deceptive television commercials, deceptive home sales films, bait and switch sales tactics, violations of the Unruh Act, illegal procurement and enforcement of lien contracts and deeds of trust, poor installation of carpeting, and failure to respond to meritorious complaints from customers. The trial court, however, refused to impose civil pen-

alties and restitution as the Attorney General requested. Both sides appealed.

The appellate opinion is reported in *People v. Custom Craft Carpets, Inc.,* 159 Cal.App.3d 676, 206 Cal.Rptr. 12 (1984). Expressing disgust with Custom Craft's "offensive practices" and "innumerable instances of unethical conduct" (*Id.* at 680–81; 206 Cal.Rptr. at 15), the court of appeal affirmed the award of injunctive relief and the determination that Custom Craft was liable for its many violations of the unfair competition and false advertising provisions of the Business and Professions Code. The appellate court, however, reversed the trial court in part, concluding that it had abused its discretion in failing to impose mandatory civil penalties and order restitution.

On remand, the trial court conducted supplemental evidentiary proceedings limited to the issues of appropriate monetary sanctions. On August 7, 1985, the court issued a Modified Final Judgment and on October 2, 1985 issued a Statement of Decision, which states:

"Defendants' violations of law were extensive. Over 20,000 deceptive television commercials were broadcasted, of which at least 6,000 were the blatantly deceptive commercials filed by William Riead. Defendants' television commercials were responsible for approximately 90% of defendants' customer leads which by early 1978 netted defendant over 40,000 customers.

"Defendants' deceptive television commercials were followed by deceptive sales films, bait and switch, violations of the Unruh Act, tricking customers into signing illegal lien contracts on their homes, backdating documents, improper installation, the use of illusory and deceptive warranties, the failure to respond to legitimate complaints, the use of extortionistic collection letters, impersonating a deputy sheriff, and by other deceptive conduct.

"Defendants prospered from their deceptive, unethical and illegal business practices. For example, their sales grew from $2,578,974 in carpet and drapery sales during fiscal year 1976 to over $4,000,000 during fiscal year 1980. During this time, defendants generated more than $16 million in sales from more than $2 million in advertising.

"Defendants attempted to mitigate their exposure to civil penalties by submitting declaration testimony of their poor financial state indicating a negative net worth greatly exceeding one million dollars. The burden of proving defendants' inability to pay the requested civil penalties rests on defendants' shoulders. *People v. Toomey,* (1984) 157 Cal.App.3d 1, 24 [203 Cal.Rptr. 642]. Defendants failed to meet this burden.

"The evidence offered by defendants concerning their net worth was not believed by this court. The record is replete with examples of defendants' lack of veracity. For example, defendants admitted that the two million dollar contingent liability claims to be owed to Eugene Krivis was in reality only a one thousand dollar liability. Jason Taite admitted giving Independence Bank a financial statement which falsely purported to be prepared by a certified public accountant and which contained deliberately false financial information. Jason Taite also gave the bank a copy of the Taites' personal income tax return. Elaine Taite's signature was forged on the tax return. The numerous contradictions in financial statements and other financial evidence submitted to this court were so substantial and self-impeaching that the defendants' financial information could not be believed. Defendants' life style, which includes the recent purchase of a second home, recent remodeling, two leased luxury vehicles and a line of credit at a gambling casino indicate a substantially different financial picture than the one defendants attempted to paint ...

"Over 3,000 customers in Los Angeles County alone had illegal liens placed on their homes. Eighteen homes in Los Angeles county were sold at foreclosure sales based on defendants' illegal and void liens. The proscribed practices were pervasive and long enduring. The

$750,000 civil penalty was based on the totality of the circumstances for all the violations of law that occurred."

*People v. Custom Craft Carpets, Inc.,* Statement of Decision, Superior Court of Los Angeles County, No. C226056 pp. 6–8 (1985).

The $750,000 civil penalty was by no means the maximum that could have been awarded. California Business and Profession Code Sections 17206 and 17536 authorized up to $2,500 for each violation. The $750,000 in civil penalties "amounts to no more than $125 for each of the 6,000 broadcasts of the deceptive television commercials." *Id.* at 8.

In addition to the $750,000 civil penalty, the trial court ordered Debtors to pay $256,645 as partial restitution. The Statement explained that the amount of restitution was based upon a finding that 3,001 Los Angeles County customers of Debtors' company had paid between $35–45 in lien fees and reconveyance fees of $32.50 and $50.00 between 1975 and 1984 as a result of Debtors' illegal acts. The restitution calculation did not include lost equity in the homes, foreclosure related fees, or fees for contracts recorded outside of Los Angeles County.

Although dated shortly after Debtors' bankruptcy filing, the supplementary Statement of Decision was issued by the trial court *sua sponte* to provide a detailed explanation of the calculation of monetary awards already entered. This court thus could properly consider it.

On October 18, 1985, the Attorney General filed an adversary complaint in Debtors' bankruptcy case to determine the nondischargeability of (1) the Court of Appeal's order for $10,000 in sanctions resulting from the filing of the frivolous appeal; (2) the Superior Court judgment awarding $750,000 in civil penalties; and (3) the Superior Court judgment awarding $256,645 as restitution.

## I. THE EFFECT OF THE STATE COURT JUDGMENTS

Bankruptcy court has exclusive jurisdiction to determine the nondischarge-ability of a debt arising from a state court judgment. *Lawrence T. Lasagna, Inc. v. Foster,* 609 F.2d 392, 396 (9th Cir.1979); *In re Houtman,* 568 F.2d 651, 653 (9th Cir. 1978); *In re Moultrie,* 51 B.R. 368, 372 (Bankr.W.D.Wash.1985). Under the Ninth Circuit rule, a state court judgment rendered after full litigation of the issues may be offered to establish a *prima facie* case of the elements of nondischargeability. The debtor has the right to offer rebuttal evidence, however, on the Section 523 criteria. *Id.* at 373.

As California's evidence of the fraud and misrepresentation perpetrated by Debtors, the Attorney General offered into evidence the Findings of Fact and Conclusions of Law, the Final Judgment, Modified Final Judgment, and Statement of Decision of the trial court and the published opinions of the California court of appeal in both *Custom Craft Carpets, Inc., et al, v. Miller* and *People v. Custom Craft Carpet, Inc.* The judgment against Debtors on the issue of liability was final at the time of the hearing in the adversary proceeding; the Superior Court's post-remand decision on the monetary awards was still pending on appeal.

The only rebuttal testimony offered by Debtors was that of Elaine Taite. Her testimony established that she had actual prior knowledge of the misrepresentations made in many of the commercials and that she was actively involved in the operations of the business, even though her ex-husband was the decision-maker. She, of course, shared Jason Taite's plush life style supported by the ill-gotten gains of these deceptive practices. She did not, however, have any knowledge of, participate in, or benefit from the suit to enjoin the Attorney General's investigation. By that time, her marriage was crumbling and her role in the business was *de minimus.*

The Attorney General argued that this Court should find all of the monetary awards against Debtors nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(7). The following discussion first focuses on the dischargeability of the civil

penalties, then addresses the restitution award, and, finally, the court sanctions.

## II. THE CIVIL PENALTIES

■ The Attorney General argues that the $750,000 of civil penalties imposed by the state court judgment are automatically nondischargeable under Section 523(a)(7). This subsection makes a debt nondischargeable "... to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss...."

The penalties in this case fall squarely within the scope of this exception to discharge. Although civil in nature, an action by the Attorney General of California for violation of the California Business and Professions Code is a law enforcement action for the purpose of punishing the defendant and deterring further offenses. The civil penalties imposed against the defendant are intended to be punitive:

> "An action filed· by the People seeking injunctive relief and civil penalties is fundamentally a law enforcement action designed to protect the public and not to benefit private parties. The purpose of injunctive relief is to prevent continued violations of law and to prevent violators from dissipating funds illegally obtained. Civil penalties which are paid to the government (§ 17536, subds. (b) and (c); ...) are designed to penalize a defendant for past illegal conduct." *People v. Pacific Land Research,* 20 Cal.3d 10, 17, 141 Cal.Rptr. 20, 24, 569 P.2d 125, 129 (1977).

Moreover, Business and Professions Code Section 17206, under which Custom Craft was found liable, mandates that the trial court "must exact a penalty for *each* violation committed." *Custom Craft, supra,* 159 Cal.App.3d at 686, 206 Cal.Rptr. at 18 (emphasis in original). The trial court may only exercise discretion as to the amount of the penalty up to the $2500 ceiling per violation. This Court, therefore, concludes that the civil penalties of $750,-000 imposed against Debtors are a debt for a "penalty payable to or for the benefit of

a governmental unit" within the meaning of Section 523(a)(7). This penalty is therefore automatically nondischargeable. The State was thus not required to institute an adversary proceeding under 11 U.S.C. § 523(c) to determine nondischargeability of these penalties.

## III. THE RESTITUTION ORDER

The Attorney General also argues that the $256,645 civil restitution order against the Debtors should be held nondischargeable under Section 523(a)(7). This issue appears to be one of first impression.

In late 1986, the United States Supreme Court held that *criminal* restitution is automatically nondischargeable because "§ 523(a)(7) preserves from discharge any condition a state criminal court imposes as part of a criminal sentence." *Kelly v. Robinson,* 479 U.S. ——, 107 S.Ct. 353, 361, 93 L.Ed.2d 216 (1986). Although the question of civil restitution was not addressed, the Court's analysis bears upon the issues here.

In 1980, Carolyn Robinson pled guilty to a charge of larceny arising from the wrongful receipt of welfare payments from the State of Connecticut. The Connecticut Superior Court sentenced her to a prison term followed by a period of probation. As a condition of the probation, Robinson was ordered to make restitution of $100 per month to the Connecticut Probation Office. In 1981, Robinson filed a Chapter 7 bankruptcy petition listing the restitution obligation as a debt. Although informed that any objection to discharge of debts must be made prior to April 27, 1981, no state agency objected and debtor was granted a discharge. Later, the Connecticut Probation Office told Robinson that the discharge did not affect her obligation to continue restitution payments. Robinson filed an adversary proceeding in the Bankruptcy Court seeking declaratory relief and an injunction to prevent enforcement of the restitution order.

The bankruptcy court concluded that the discharge did not alter the state-ordered condition of parole. *Robinson v. McGuigan,* 45 B.R. 423 (Bankr.D.Conn.1984). In

that court's view, the required payments were not a debt under the definitional sections of the Bankruptcy Code, 11 U.S.C. §§ 101(11), 101(4) and 101(9). Since the required payments did not qualify as a "debt," they were not affected by the bankruptcy discharge. The court offered an alternate basis for its ruling: "Assuming *arguendo* that the state court's order of restitution did create a 'debt' within the purview of the Bankruptcy Code, such a debt is a 'penalty' and therefore excepted from discharge under § 523(a)(7)." *Id.* at 424 (emphasis in original). The district court affirmed the decision of the bankruptcy court.

The Second Circuit Court of Appeals rejected this analysis. *In re Robinson,* 776 F.2d 30 (2d Cir.1985). It concluded that the restitution was a "debt" but not a "penalty," and therefore held that it was dischargeable absent a timely and successful complaint filed pursuant to 11 U.S.C. § 523(c) to determine nondischargeability under Section 523(a)(2). The United States Supreme Court reversed, based upon its conclusion that Section 523(a)(7) "... creates a broad exception for all penal sanctions, whether they be denominated fines, penalties, or forfeitures..... [I]t codifies the judicially created exception to discharge for fines." 479 U.S. at ——, 107 S.Ct. at 362.

Quoting *In re Pellegrino,* 42 B.R. 129, 133 (Bankr.Conn.1984), the Supreme Court emphasized the governmental benefit:

> " 'Unlike an obligation which arises out of a contractual, statutory or common law duty, here the obligation is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose.' "

*Robinson, Id.* 479 U.S. at ——, 107 S.Ct. at 362.

The Supreme Court concluded that restitution was "not compensation for actual pecuniary loss" because "the victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant." *Id.* at ——, 107 S.Ct. at 362.

Throughout its opinion, the Supreme Court placed overriding importance on federal deference to "the States' interest in administering their criminal justice systems free from federal interference." *Id.* at ——, 107 S.Ct. at 361. In so doing, the *Robinson* majority avoided close analysis of the overall framework of the Bankruptcy Code and deliberately sidestepped the question of whether criminal restitution was a "debt" within the meaning of 11 U.S.C. § 101(11). *Id.* at ——, 107 S.Ct. at 361. This emphasis was necessary to the result because of Connecticut's failure to file a nondischargeability complaint against Robinson. Therefore, unless the debt was held to be automatically nondischargeable under Section 523(a)(7), Robinson would have to be discharged from her obligation due to the state's inaction. By contrast, here the State of California filed a timely complaint under Section 523(c).

*Robinson* leaves unanswered whether restitution ordered as part of a *civil* fraud judgment obtained in furtherance of a state's law enforcement purposes is either automatically nondischargeable under section 523(a)(7) or may be held a nondischargeable debt under section 523(a)(2).

## A. Civil Restitution As A "Debt"

The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(11). In turn, section 101(4) defines "claim" to include any:

> "(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; ..."

Section 101(9) defines a "creditor" as an: "(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." "Entity" includes "person, estate, trust and governmental unit." 11 U.S.C. § 101(14).

As a result of a state court judgment against Debtors, California has a right to payment of $256,645, which, absent the bankruptcy filing, it would have been entitled to enforce against Debtors' property in the same manner under California law as any judgment creditor. Under these definitional sections, therefore, the restitution judgment constitutes a "debt" that is subject to discharge in bankruptcy unless excepted from discharge under one or more provisions of Section 523.

This conclusion is confirmed by the legislative history of Section 101(4)(A), which emphasizes the broad sweep of the concept of "debts" that should be administered in a bankruptcy case:

"All claims against the debtor, whether or not contingent or unliquidated will be dealt with in the bankruptcy case ... The proposed law will permit a complete settlement of the affairs of a bankrupt debtor, and a complete discharge and fresh start."

"..."

"... [S]ection 101(4) adopts an even broader definition of claim than is found in the present debtor rehabilitation chapters ... By this broadest possible definition, and by the use of the term throughout the title 11, ... the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court." H.R. Rep. No. 595, 9th Cong., 1st Sess. 309, *reprinted* in 1978 U.S.Code Cong. & Ad. News 5787, 5963, 6141, 6266.

The Senate Report that accompanied S. 2266 offered the same explanation of its identical definition of claim. *See* S.Rep. No. 989, 95th Cong. 2d Sess. 21, *reprinted in* 1978 U.S.Cong. & Ad.News, 5807–08, *reprinted in* Bankruptcy Reform Act of 1978; Hearings on S. 2266 and H.R. 8200 Before the Subcomm. on Improvements in Judicial Machinery of Senate Comm. on the Judiciary, 95th Cong., 1st Sess. 3 (1977).

Even though Section 523(a)(7) speaks in terms of "*debt* ... for a fine, penalty or forfeiture," the *Robinson* majority re-

served the question of whether criminal restitution is a debt. Dissenting Justices Marshall and Stevens, however, argued that the criminal restitution was by definition a "debt": "The definition of 'debt' is intentionally broad not only to ensure the debtor of a meaningful discharge but to guarantee as many creditors as possible the right to participate in the distribution of the property of the estate." 479 U.S. at ——, 107 S.Ct. at 365. Commenting on the Second Circuit's opinion in *Robinson,* Justice Marshall stated:

As the Court of Appeals observed, a conclusion that the restitution obligation was not a debt 'would produce the anomalous result that no holder of a right to restitution could participate in the bankruptcy proceeding or receive any distributions of the debtor's assets in liquidation. There is no evidence that Congress intended such a result.' 776 F.2d, at 35–36. On the contrary, Congress plainly intended that fines, penalties and forfeitures be deemed debts eligible to participate in the distribution of the bankruptcy estate, and the statute provides explicitly for that participation. See 11 U.S.C. § 726(a)(4). The very fact that fines, penalties and forfeitures are made nondischargeable under § 523(a)(7) indicates that they were deemed 'debts'; if they were not debts, they would not be affected by discharge, see 11 U.S.C. § 524, and there would be no need to make them nondischargeable." *Id.* at ——, 107 S.Ct. at 365.

This analysis compels the conclusion that the instant civil restitution order is a "debt" under the Bankruptcy Code.

## B. *Applicability of Section 523(a)(7) to Civil Restitution Judgments*

The Section 523(a)(7) exception to discharge has two tests that debts for fines, penalties and forfeitures must satisfy: (1) they must be "payable to and for the benefit of a governmental unit", and (2) they must *not* be "compensation for actual pecuniary loss". In *Robinson,* the United States Supreme Court held that, due to their law enforcement character, criminal

restitution judgments qualify as "fines" that are not debts for "actual pecuniary loss". 479 U.S. at ——, 107 S.Ct. at 361.

The *Robinson* dissenters parted company with the majority in concluding that criminal restitution is intended as compensation for the victim's pecuniary loss. As such, the dissenters would exclude restitution from automatic exception to discharge under Section 523(a)(7). In their view, although Connecticut's debt might well have been determined nondischargeable under other subsections of Section 523, failure to file the requisite complaint to determine nondischargeability meant that the restitution claim must be discharged. *Cf., In re Heincy*, 58 B.R. 930 (Bankr.S.D.Cal.1986) (Holding that a criminal restitution order was a debt, the bankruptcy court enjoined California from enforcing the restitution order during the pendency of the chapter 13 case, because the debt was provided for in the plan and the State had not timely objected to its discharge); *Cf. In re Johnson-Allen*, 69 B.R. 461 (Bankr.E.D.Pa.1987) (Criminal restitution obligations are "debts" dischargeable under chapter 13 plans.)

■ The question presented here is whether a government's civil restitution award based upon a finding of fraud is automatically nondischargeable under this section, or whether it should be subject, like civil fraud judgments obtained by any other creditors, to prove-up under the standard of Section 523(a)(2).

In determining if Section 523(a)(7) of the Bankruptcy Code should be interpreted broadly to include civil restitution, this Court is guided by the rule of construction stated so well by Justice Douglas: " 'We do not read these statutory words with the ease of a computer. There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction.' " *Bank of Marin v. England*, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966).

On the one hand, Congress has recognized the special importance of civil law enforcement in exempting from the automatic stay provisions of the Bankruptcy Code not only state criminal proceedings, but also "the commencement or condition of an action or proceeding by a governmental unit to enforcement such governmental unit's police or regulatory power." 11 U.S.C. § 362(b)(4).

On the other hand, a significantly different standard of proof is required in civil law enforcement and regulatory actions, than in criminal matters. Moreover, a determination of civil liability is not necessarily predicated upon the same kind of findings of intent and wrongful conduct as would be essential to criminal liability.

Examination of the statutory enforcement scheme at issue here demonstrates that the restitution remedy serves two goals: deterrence and compensation of victims. A state suit for violation of California's consumer protection statutes "is fundamentally a law enforcement action designed to protect the public and not to benefit private parties." *People v. Pacific Land Research Co., supra*, 20 Cal.3d at 17, 141 Cal.Rptr. at 24, 569 P.2d at 129. Any request for restitution in such an action is only ancillary to the remedies sought for the benefit of the public. *People v. Superior Court (Jayhill)*, 9 Cal.3d 283, 286, 107 Cal.Rptr. 192, 194, 507 P.2d 1400, 1402 (1973).

Restitution awards have been held to benefit the public and the state because "[t]he requirement that a wrongdoing entity disgorge improperly obtained moneys surely serves as the prescribed strong deterrent," which is why California has the standing to enforce such judgments. *Fletcher v. Security Pacific National Bank*, 23 Cal.3d 442, 450, 153 Cal.Rptr. 28, 33, 591 P.2d 51, 56 (1979). However, civil restitution is, by its very nature, *primarily* intended to compensate victims for their losses. Here, the restitution award of $256,645 was ordered payable to the State of California and "shall be used to reimburse Custom Craft customers for funds they paid to defendants or their assignees...."

■ Because only the State has standing to enforce its restitution judgment against Debtors, it qualifies as a creditor holding a restitution claim for purposes of the Bank-

ruptcy Code. If the actual victims had obtained their own fraud judgments against Debtors, however, they could have filed complaints to determine the nondischargeability of their restitution awards under 11 U.S.C. § 523(a)(2). As with all other creditors with Section 523(a)(2) claims, their evidence of fraud judgments could be rebutted by a debtor who is afforded the opportunity to persuade the bankruptcy court that the debtor's conduct was not of a type that should deprive him or her of a "fresh start." *In re Houtman, supra,* 568 F.2d at 655.

The *identity* of the creditor holding a civil restitution award should not control whether the bankruptcy court is deprived of its exclusive jurisdiction to determine dischargeability of compensatory civil fraud judgments. Such a result would be contrary to one of the major thrusts of the Bankruptcy Reform Act of 1978—to classify *claims*, not creditors. Moreover, depriving the bankruptcy court of jurisdiction over this issue would mean depriving the debtor of the right to offer mitigating evidence to secure a "fresh start," in circumstances lacking the stringent due process protections of a criminal conviction.

The compelling state interest in the criminal sentencing process that was key to the *Robinson* analysis is absent here. Therefore, this court concludes that Section 523(a)(7) should not be extended to include civil restitution judgments obtained by the State on behalf of victims of a consumer fraud scheme, because they are primarily "compensation for actual pecuniary loss."

### C. *Applicability of Section 523(a)(2)*

■ Holding that this civil restitution claim falls outside Section 523(a)(7)'s exception does not render it immune from a dischargeability attack. Based upon the State's timely complaint under Section 523(c), this court finds that this restitution claim is nondischargeable under Section 523(a)(2). Section 523(a)(2) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, false representa-

tion, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ...."

California's claim based on its consumer fraud judgment qualifies as a claim for money "obtained by ... false pretenses, false representation, [and] actual fraud." The State filed a timely complaint and has established all necessary elements for a nondischargeability holding. *See In re Taylor,* 514 F.2d 1370 (9th Cir.1975). The findings of the state court portray a massive, long-term, intentional scheme by Debtors to defraud consumers out of millions of dollars. Thousands of customers were induced to buy carpet through deceptive ads, and at least eighteen lost their houses to foreclosure as a result of Debtors' illegal liens. Therefore, this Court holds that the restitution award of $256,645 is nondischargeable under under Section 523(a)(2) of the Bankruptcy Code.

### IV. ELAINE TAITE'S LIABILITY

■ Elaine Taite argued that the civil penalties of $750,000 and the restitution award of $256,645 should be discharged as to her, even if held nondischargeable as to Jason Taite. Elaine contended that she was not personally responsible for making any corporate decisions and was simply a passive spouse. This Court does not need to decide whether a debt of a truly passive spouse can be discharged from fraud under appropriate circumstances. The evidence of the state court findings and her own testimony in this court's hearing conclusively prove that Elaine Taite was an active accomplice and knowing beneficiary of the fraud scheme underlying these judgments.

In evidence adduced at the state court trial and confirmed at the hearing in this court, the State proved that Elaine was the Secretary-Treasurer, Vice-President and Director of Custom Craft and co-owner of 100% of the shares of the corporation. Among other things, she signed the deceptive and illusory warranties and saw the deceptive home sales film, "The Custom Craft Story," in advance of its showing to the public. She knew that the film and ads were false and that they were intended to

persuade consumers to buy Custom Craft's carpet. The trial court found this home sales film to be highly deceptive and misleading.

Although Elaine Taite lacked control of corporate decisions and activities, she had actual knowledge of and actively participated in the ongoing business of Custom Craft. She was effectively a partner in the business as well as the marriage. The fraud was conducted in the ordinary course of Custom Craft's business. Elaine Taite benefitted financially from the deception worked upon Custom Craft's customers. Under the standard enunciated by the Ninth Circuit in *In re Cecchini*, 780 F.2d 1440 (9th Cir.1986), the debts for both penalties and restitution are nondischargeable as to Elaine Taite.

## V. THE SANCTIONS AWARD

■ The $5,000 penalty awarded to the Attorney General is a "penalty ... payable to and for the benefit of a governmental unit." 11 U.S.C. § 523(a)(7). It is not "compensation for actual pecuniary loss." The court of appeal awarded the $5,000 in addition to the usual costs on appeal to discourage the Debtors and others from similar conduct in the future. This Court, therefore, finds the $5,000 in sanctions nondischargeable as to the debtor Jason Taite. Elaine Taite's testimony before this court established that she had no knowledge of either the original court complaint in *Custom Craft Carpet, Inc. v. Miller* or the filing of the appeal by her estranged husband. Neither of these actions were in the ordinary course of Debtors' business. Moreover, when these events occurred, Elaine Taite had already withdrawn from the business. This Court concludes that Elaine Taite should not be held liable for the filing of the *Miller* case or appeal. The $5,000 in sanctions is therefore dischargeable as to her.

## CONCLUSION

This court holds the civil penalties nondischargeable under 11 U.S.C. § 523(a)(7). The civil restitution award is nondischargeable under 11 U.S.C. § 523(a)(2), but Sec-

tion 523(a)(7) does not apply. These monetary awards are nondischargeable as to both Jason and Elaine Taite in such amounts as may be ultimately upheld by the state courts. The $5,000 in sanctions awarded in *Custom Craft Carpets, Inc. v. Miller* is dischargeable as to Elaine Taite, but nondischargeable as to Jason Taite.

An appropriate order shall be entered forthwith.