217 B.R. 1008 (1998)
In re James TOWERS, Debtor.
The PEOPLE OF THE STATE OF ILLINOIS EX REL. James E. RYAN, Attorney General of Illinois, Appellant,
v.
James TOWERS, Appellee.
No. 97 C 6005.
United States District Court, N.D. Illinois, Eastern Division.
January 30, 1998.
James Douglas Newbold, Joan Ellen Smuda, Illinois Attorney General's Office, Faith Andrea Lukin, Attorney General, David A. *1009 Belofsky & Associates, P.C., Chicago, IL, for People of the State of Illinois.
John M. Kennelly, Kennelly & Associates, Oak Park, IL, for Appellee.
James Towers, Kennelly & Associates, Oak Park, IL, Pro se.

MEMORANDUM AND ORDER
MORAN, Senior District Judge.
The People of the State of Illinois, ex rel. James E. Ryan, Attorney General of Illinois, (State) appeals that part of the order of the United States Bankruptcy Court entered on July 7, 1997, denying the State's motion for summary judgment (July 7 order). In its order, the bankruptcy court found that the debt owed by James Towers (Towers) to the State for restitution of $210,082.34 for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1 et seq., is dischargeable under Chapter 7 of the Bankruptcy Code. On appeal, the State argues that the bankruptcy court erred in so finding and that the order for restitution is nondischargeable under 11 U.S.C. § 523(a)(7), which excepts from discharge any debt that is "for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not for actual pecuniary loss. . . ." This court has jurisdiction pursuant to 28 U.S.C. § 158(a). For the reasons stated herein, we reverse the bankruptcy court's order in relevant part and grant the State's motion for summary judgment.

BACKGROUND
The district court accepts the bankruptcy court's fact-findings unless clearly erroneous. Fed.R.Bankr.P. 8013; see also, In re Tolona Pizza Products Corp., 3 F.3d 1029, 1033 (7th Cir.1993). Since neither party disputes the facts in this case we accept the undisputed facts as set forth by the bankruptcy court in its July 7 order.
Towers was president of Update Financial Services Corporation (UFSC), a consumer debt financing business. A representative of UFSC contacted individuals whose homes were in danger of foreclosure, and entered into contracts with them for UFSC to find financing to save their homes from foreclosure. UFSC charged the homeowners a fee and commission for its work, and at least some of its customers were required to enter into an agreement to escrow funds for closing. All escrow funds and a portion of the application fee were to be refunded if UFSC could not arrange a loan large enough to prevent the foreclosure.
On June 4, 1986, the State brought suit in the Circuit Court of Cook County, Chancery Division (No. 86-CH-5458), under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq., against Towers, individually, and in his official capacity as president of UFSC (state court litigation). The State also sued several of Towers' fellow officers and several banks. The suit alleged that Towers and his colleagues were guilty of fraudulent business practices in their operation of UFSC. The State alleged, inter alia, that Towers and the other defendants failed to refund monies due customers from their escrow accounts, and failed to return the application fee when UFSC's financing efforts failed. Towers' attorney filed an unverified answer to the verified complaint, disputing the consumer fraud claims made by the State.
The case remained for a number of years in the Chancery Division of the Circuit Court. Eventually, the state court entered a default order against Towers and Percy Middleton, UFSC's secretary. On August 22, 1991, the state court entered a final judgment order and permanent injunction order (final judgment) against Towers and Middleton. The final judgment provided that Towers and Middleton were enjoined from engaging in the business of mortgage banking in Illinois. It also required Towers and Middleton to pay a state civil penalty of $50,000, investigative costs of $50,000, and restitution of $210,082.34.
On April 2, 1987, while the state court litigation was pending, Towers filed a petition under Chapter 7 of the Bankruptcy Code (No. 87-B-4905) (1987 bankruptcy case). On August 7, 1987, the automatic stay was modified in this bankruptcy case to permit the State to proceed with the pending state court *1010 litigation against Towers. Although it held a claim against Towers, the State did not file a complaint to determine the dischargeability of the debt owed by Towers to the State. See 11 U.S.C. § 523(c); Fed.R.Bankr.P. 4007. An order of discharge was entered on August 6, 1987 and the 1987 bankruptcy case was closed on October 15, 1987.
On January 18, 1995, Towers filed another Chapter 7 petition (No. 95-B-102), which is the subject of the present litigation. In response to Towers' petition, on April 7, 1995, the State filed its adversary complaint to determine dischargeability of debt, seeking to except from discharge the civil penalty, restitution payment, and investigative costs[1] assessed against Towers in the final judgment of the state court Consumer Fraud Act case. An order of discharge was entered on May 26, 1995. On June 2, 1995, Towers filed his response to the adversary complaint and on February 7, 1996, the State filed the instant motion for summary judgment, arguing that 11 U.S.C. § 523(a)(7) excepts from discharge Towers' obligations for restitution in the amount of $210,082.34 and civil penalty in the amount of $50,000. On April 23, 1996, Towers filed a cross-motion for summary judgment, arguing that any claim of the State against him as debtor was discharged pursuant to Bankruptcy Rule 4004(c).
On July 7, 1997, the bankruptcy court issued its order granting in part the State's motion and denying Towers' motion. Specifically, the court held that the debt owed by Towers to the State for restitution is dischargeable under 11 U.S.C. § 523(a)(13), but that the debt Towers owes the State for penalties is not dischargeable under 11 U.S.C. § 523(a)(7). The State now appeals that portion of the bankruptcy court's order finding that the debt owed to the State for restitution is dischargeable under § 523(a)(13).

DISCUSSION
The district court reviews the bankruptcy court's legal conclusions under a de novo standard. In re UNR Indus., 986 F.2d 207, 208 (7th Cir.1993). Since this matter is before the court on cross-motions for summary judgment, and since there are no material factual disputes between the parties, we review de novo whether the bankruptcy court was correct in denying in part the State's summary judgment motion by holding that Towers' obligation to pay the State restitution is dischargeable as a matter of law.
A motion for summary judgment may be granted when there are no issues of material fact and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); Renovitch v. Kaufman, 905 F.2d 1040, 1044 (7th Cir.1990). The movant must point to those portions of the record that demonstrate the absence of any genuine issue of material fact, Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986), and all reasonable inferences are drawn in favor of the non-movant, see e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991). Summary judgment should be granted when it is clear that the plaintiff could not carry his burden of persuasion at trial on one or more elements. See generally Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986).
In its final judgment the Illinois state court in the underlying Consumer Fraud Act case found that Towers was obligated to pay $210,082.34 in restitution. In its motion for summary judgment the State argued that this obligation is not dischargeable under § 523(a)(7) of the Bankruptcy Code.[2] That section provides as follows:

*1011 (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt 
(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss. . . .
11 U.S.C. § 523(a)(7). The State argued in its motion (and argues again here on appeal) that despite its apparent narrow scope of application, § 523(a)(7) has been interpreted broadly to except from discharge all claims for criminal and civil restitution. See Kelly v. Robinson, 479 U.S. 36, 53, 107 S.Ct. 353, 362-63, 93 L.Ed.2d 216 (1986) (holding that restitution obligations, imposed as conditions of probation in state criminal proceedings, are not dischargeable under § 523(a)(7)); United States Dept. of Housing & Urban Dev. v. Cost Control Marketing and Sales Management of Virginia, Inc. (CCMV), 64 F.3d 920, 927-28 (4th Cir.1995) (finding that order of civil restitution in the form of a disgorgement of ill-gotten profits was "penal" in nature and therefore not dischargeable under § 523(a)(7)), cert. denied, (517 U.S. 1187, 116 S.Ct. 1673, 134 L.Ed.2d 777 (1996)). The State argued that since the restitution order against Towers was penal in nature and therefore "not in compensation of actual pecuniary loss," it was excepted from discharge under § 523(a)(7).
The bankruptcy court rejected the State's attempt to categorize the restitution order as a "fine, penalty, or forfeiture" which is excepted from discharge under § 523(a)(7), instead holding that the restitution order in question was dischargeable under a separate provision of the Bankruptcy Code that was never discussed by either party, 11 U.S.C. § 523(a)(13). That section provides:
(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt 
(13) for any payment of an order of restitution issued under title 18, United States Code.
11 U.S.C. § 523(a)(13). The bankruptcy court concluded that § 523(a)(13), which was enacted in 1994, superseded the expansive interpretation given to § 523(a)(7) by Kelly and CCMV, by specifying the specific type of restitution obligations excepted from discharge. The court concluded that under the "plain meaning" of § 523(a)(13), the restitution portion of the final judgment "is dischargeable because it does not arise under title 18 of the United States Code." (July 7 order at 17).
I. The Relation Between Bankruptcy Code § 523(a)(7) and § 523(a)(13)
The issue on appeal in this case, then, is the purely legal one of divining the meaning of apparently related, yet analytically distinct, provisions of the same statutory scheme, and determining which provision controls the outcome of this case. Specifically, we must define the parameters of § 523(a)(13) as it relates to § 523(a)(7) of the Bankruptcy Code and determine whether the two provisions overlap, are cumulative, or are mutually exclusive.
This issue involves the clash of competing theories of statutory construction and we therefore begin by setting forth the interpretive disagreement between the bankruptcy court and the State. The bankruptcy court relied on two separate maxims of statutory interpretation to justify its holding that § 523(a)(13) disposes of the restitution claim at issue. First, the court stated that the doctrine of inclusio unius est exclusio alterius ("the inclusion of one is the exclusion of another") controls this case (July 7 order at 17). When construing statutory provisions under this doctrine, courts must presume that Congress acted intentionally and purposefully when it includes particular language in one section of a statute and excludes other language that it was capable of incorporating. See BFP v. Resolution Trust Corp., 511 U.S. 531, 537, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556 (1994) ("`[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another'. . . . ").
Applying the doctrine to § 523(a)(13), the bankruptcy court reasoned that by including *1012 a certain class of restitution as nondischargeable under § 523(a)(13) (i.e., orders of restitution issued under title 18 of the United States Code), Congress intended to exclude all other classes of restitution from being nondischargeable (i.e., orders of restitution issued under state law or under any federal law other than title 18). Thus, federal orders of restitution issued under title 18 are nondischargeable under the specific terms of § 523(a)(13), and all other forms of restitution are dischargeable by negative implication.[3] The congressional silence with respect to state or non-title 18 federal restitution claims admits of only one permissible interpretation: Congress intended to make those forms of restitution dischargeable. According to the bankruptcy court, this conclusion is supported by the fact that other portions of the Bankruptcy Code  specifically § 1328(a)(3)[4] explicitly except from discharge both state and federal restitution obligations, demonstrating that Congress knew how to specify the types of restitution orders it wanted to make dischargeable. The bankruptcy court therefore found that § 523(a)(13) supersedes any contrary interpretation of the dischargeability of civil restitution orders offered under § 523(a)(7). The restitution order in question in this case was held to be dischargeable, since it arose out of a state court judgment and therefore did not fall within the nondischargeable forms of restitution specified by § 523(a)(13).
To buttress this holding, the bankruptcy court employed a second maxim of statutory interpretation, namely, that a statute must be interpreted so as to give meaning to all of its parts. In order to do this in the context of Chapter 7, the bankruptcy court found it necessary to construe § 523(a)(13) and § 523(a)(7) as mutually exclusive:
Section 523(a)(7) of the Code is concerned with the dischargeability of fines and penalties, with no distinction between state and federal penalties, and expressly excludes "compensation for actual pecuniary loss" from its scope. Section 523(a)(13) is concerned with those obligations that section 523(a)(7) expressly does not cover: restitution, and does not address fines or penalties. As a result, under section 523(a)(7) of the Bankruptcy Code, fines and penalties are not dischargeable, but compensation for pecuniary loss is dischargeable. However, under section 523(a)(13) of the Code, federal restitution . . . is not dischargeable.
(July 7 order at 19). If § 523(a)(7) was construed as excepting from discharge all civil and criminal restitution orders considered penal in nature, then § 523(a)(13) would be rendered superfluous. Accordingly, the bankruptcy court found that § 523(a)(13) exclusively governs the dischargeability of all forms of restitution.
The State disagrees with each of the doctrines of statutory interpretation that the bankruptcy court applies, and offers competing doctrines which it asserts provide more useful guides to understanding the relationship between § 523(a)(13) and § 523(a)(7). First, the State objects to the bankruptcy court's application of the doctrine inclusio unius est exclusio alterius, and instead offers different maxims which it says lead to the correct result here. Specifically, the State asserts that "if there has been a judicial construction of a statute, the language of which has not been changed upon subsequent amendment of other portions of the statute, it must be presumed that Congress was satisfied with and adopted the judicial construction given the unchanged portion of the statute" (Appellant Br. at 7). In addition, the *1013 State contends that "the rules of statutory construction require that if Congress codifies existing judicially created law, or amends an existing statute, it is deemed to have adopted the existing judicial interpretation, absent a clear Congressional manifestation of contrary intent" (Appellant Br. at 8). Applying these maxims, the State argues that since § 523(a)(13) was enacted well after the decision in Kelly (which exempted restitution from discharge), and since no explicit changes were ever made to § 523(a)(7), this court must find that the judicial construction given to § 523(a)(7) by Kelly still applies.
This case thus presents a novel issue: whether the addition of § 523(a)(13) should, as the bankruptcy court argues, be interpreted as superseding the judicial construction given § 523(a)(7) by the Kelly court, or if it should be viewed, as the State argues, as an independent provision that does not alter the judicial construction of § 523(a)(7). We find that to the extent that criminal and civil restitution obligations were considered nondischargeable as "fines, penalties, and forfeitures" under § 523(a)(7), that result should continue despite the addition of § 523(a)(13). We therefore reverse the bankruptcy court's order to the extent it held that the issue of the dischargeability of restitution obligations was controlled exclusively by § 523(a)(13).
This conclusion is supported by several factors, the most important being § 523(a)(13)'s relation to the Supreme Court's decision in Kelly. This relation is best described by the following analysis:
The Court in Kelly held that state criminal court ordered restitution was more like a criminal fine that could not be excepted from discharge under Code § 523(a)(7). The holding turned in part on a finding that congress had not intended to legislatively overrule "the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice system." 479 U.S. at 43-44, 107 S.Ct. at 358. Thus, the holding was influenced, in part, by concerns of federalism, concerns not applicable with respect to restitution ordered by federal criminal courts. Although the general rationale of the case applies equally to federal as well as state criminal court restitution orders, ambiguity could arise with respect to the application to federal criminal court restitution orders in light of the federalism concern.
Thus, new Code § 523(a)(13) may be properly viewed as closing a loophole with respect to restitution ordered by a federal criminal court, a loophole which does not exist with respect to state criminal court ordered restitution. The net effect appears to be that restitution ordered by a federal criminal court will be excepted from discharge pursuant to Code § 523(a)(13) as restitution. No further analysis is needed. With respect to state criminal court ordered restitution, however, courts should continue to determine whether the restitution is excepted from discharge under Code § 523(a)(7) which, for most courts, requires a finding that the restitution in question is penal, rather than pecuniary, in nature.
3 Norton Bankr.L. & Prac.2d § 47:46 (1997).
Thus, contrary to the bankruptcy court's conclusion, we believe that the narrow language of § 523(a)(13) was not meant to exclude all other forms of restitution from possible nondischargeability; rather, it was meant to clarify the existing scheme by emphasizing that federal criminal restitution orders  which were arguably not included in the Supreme Court's expansive reading of § 523(a)(7) in Kelly  were in fact nondischargeable in Chapter 7 proceedings. The doctrine of inclusio unius est exclusio alterius therefore does not apply here. Section 523(a)(13)'s silence has a different meaning than the one attributed to it by the bankruptcy court  silence in this case means acceptance of the previous judicial construction of § 523(a)(7). See Johnson v. First Nat. Bank of Montevideo, Minn., 719 F.2d 270, 277 (8th Cir.1983) ("[A]bsent a clear manifestation of contrary intent, a newly enacted or revised statute is presumed to be harmonious with existing law and its judicial construction"), cert. denied, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). Moreover (and again contrary to the conclusions of the bankruptcy court), this reading of the relation between *1014 (a)(7) and (a)(13) gives independent meaning to each one: (a)(13) fills a gap in statutory coverage by affirming that persons convicted of federal and state crimes cannot be relieved of their obligations to make penal restitution. Accordingly, we conclude that § 523(a)(13) does not control the issue of whether state and non-title 18 federal restitution orders are nondischargeable. That question must be answered pursuant to § 523(a)(7) in accordance with the criteria set forth in Kelly.
This conclusion is also buttressed by the following considerations. First, we note the fact that courts in other jurisdictions continue to evaluate the dischargeability of state and non-title 18 restitution obligations under § 523(a)(7). See, e.g., In re LaRoche, 207 B.R. 369, 371 (Bankr.D.R.I.1997). In addition, as the State points out, § 523(a)(13) was passed as part of the omnibus Violence Crime Control and Law Enforcement Act of 1994. This Act was passed to
encourage the use of community policing through assistance to States and local governments to increase . . . the number of officers walking our nation's police beats over the next six years, as well as to facilitate non-hiring community policing objectives. A key element in President Clinton's anti-crime program, H.R. 3355 provides $3.45 billion in grants to States and local governments for use in hiring officers to engage in implementing community policing.
H.R.Rep. No. 103-324 at 6 (1994), reprinted in 1994 U.S.C.C.A.N. 1082, 1083. Within the context of this statutory scheme, concerned as it is with the prevention and punishment of crime, it would be anomalous for this court to find that § 523(a)(13) was adopted with the specific purpose of relieving persons convicted of wrongdoing of their obligation to pay court-ordered restitution.
Finally, it should be noted that Congress' expressed intention to treat restitution claims similarly under Chapters 7 and 13 weighs in favor of our finding. Section 1328(a)(3), which was passed in 1990, added an exception to discharge for any debt "for restitution, or a criminal fine, included in a sentence on the [Chapter 13] debtor's conviction of a crime." 11 U.S.C. § 1328(a)(3). In this case, the bankruptcy court pointed to § 1328(a)(3) as an example of Congress knowing how to specify that it intended to make all types of criminal restitution nondischargeable, and argued on that basis that § 523(a)(13)'s narrow language was intended to make all other forms of restitution (i.e., state and non-title 18 federal restitution orders) dischargeable in Chapter 7 proceedings. However, this reading of the relation between Chapter 13 and Chapter 7 seems wrong in light of the legislative history surrounding the 1990 passage of § 1328(a)(3). There, Congress took pains to recognize that § 1328(a)(3) was "not intended to alter in any way the coverage of section 523(a)(7), as that paragraph has been interpreted in Kelly v. Robinson [citations omitted] to make criminal restitution obligations nondischargeable in Chapter 7." In re Hardenberg, 42 F.3d 986, 992 n. 6 (6th Cir.1994) (citing H.R.Rep. No. 681(I), 101 Cong., 2d Sess. 165, reprinted in 1990 U.S.C.C.A.N. 6472, 6571). Thus, rather than manifesting Congress' intent to treat Chapter 13 and Chapter 7 debtors differently, a review of the legislative history of § 1328(a)(3) demonstrates Congress' intent to maintain intact the judicial interpretation of § 523(a)(7) articulated in Kelly and ensure that "no debtor with criminal restitution obligations will be able to discharge them through any bankruptcy proceeding." Id.
In conclusion, we find that § 523(a)(13) does not preclude our consideration of whether Tower's civil restitution obligation is excepted from discharge under § 523(a)(7). We note that we make this holding with some trepidation, as the intent of Congress in enacting § 523(a)(13) is by no means clear and is subject to contrasting interpretations, as demonstrated by the bankruptcy court decision in this case. We note that this issue is one that is ripe for definitive resolution by the Seventh Circuit. We turn now to an analysis of the merits of the State's claim that the restitution order at issue is nondischargeable under § 523(a)(7).
II. The Dischargeability of Civil Restitution Orders Under § 523(a)(7)
Our finding that § 523(a)(7) covers the dischargeability of the restitution order in this *1015 case does not dispose of the issue. In order for the State to prevail, it has to demonstrate that the civil restitution order assessed against Towers in the state court Consumer Fraud Act case meets the criteria for exception from discharge set forth in § 523(a)(7).[5]
By virtue of § 523(a)(7), debts which are for (1) fines, penalties, and forfeitures, (2) payable to a governmental unit, and (3) are not compensation for pecuniary loss are excepted from discharge. The question we face in this case is whether the civil restitution order here was "for the benefit of a governmental unit" and "not compensation for actual pecuniary loss." The Supreme Court in Kelly v. Robinson addressed these issues in the context of a Chapter 7 bankruptcy proceeding filed by a debtor seeking to discharge, inter alia, a restitution payment in the amount of $100/month ordered by the State of Connecticut as part of her sentence for wrongfully receiving state welfare payments. 479 U.S. at 38-39, 107 S.Ct. at 355-56. The Court held that § 523(a)(7) creates a broad exception for all penal sanctions, including restitution orders, imposed by a state criminal court as part of a criminal sentence. 479 U.S. at 50-53, 107 S.Ct. at 361-63. In discussing the rationale for its decision, the Court stated as follows:
The criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole. Thus, it is concerned not only with punishing the offender, but also with rehabilitating him. Although restitution does resemble a judgment "for the benefit of" the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant.
Id. at 52, 107 S.Ct. at 362. The Court went on to emphasize that criminal proceedings such as the one at issue in the case focused on "the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation," id. at 53, 107 S.Ct. at 362, and for that reason restitution orders imposed in such a context were excepted from discharge under § 523(a)(7). Therefore, the Court concluded that criminal restitution orders qualify as nondischargeable "fines" that are not debts for "actual pecuniary loss." Id.
However, the Supreme Court left open the issue of whether restitution ordered as part of a civil fraud judgment obtained in furtherance of a state's law enforcement purposes, such as the one we are faced with here, is nondischargeable. The State relies heavily on United States Dept. of HUD v. CCMV, 64 F.3d 920 (4th Cir.1995), in support of its position that civil restitution orders are in fact nondischargeable.[6] In CCMV, the Fourth Circuit found that a civil order requiring the disgorgement of ill-gotten profits assessed against a land developer that failed to comply with the registration and disclosure provisions of the Interstate Land Sales Full Disclosure Act, was excepted from discharge under § 523(a)(7). Id. The court followed the "broad reading" the Supreme Court had given to § 523(a)(7) in Kelly and Pennsylvania Dep't of Public Welfare v. Davenport, 495 U.S. 552, 562, 110 S.Ct. 2126, 2132-33, 109 L.Ed.2d 588 (1990) (stating that § 523(a)(7) applies to both criminal and civil fines), superseded by statute on other grounds, in finding that the disgorgement was "penal" in nature and therefore nondischargeable. Id. at 928. The court stated that "so long as the government's interest in enforcing a debt is penal, it makes no difference that injured persons may thereby receive compensation for pecuniary loss. In other words, the `not compensation for actual *1016 pecuniary loss' phrase in § 523(a)(7) refers to the government's pecuniary loss." Id. (emphasis in original). Under CCMV, then, a civil order may be nondischargeable if it advances the state's penal interests, irrespective of whether individual victims may eventually be compensated for their losses or the government may be compensated for its loss.
The bankruptcy court in In re Taite, 76 B.R. 764 (Bankr.C.D.Cal.1987), took a different view of the dischargeability of civil restitution orders. In that case, the debtors had been found guilty by a California state court of "unlawful, unfair, and fraudulent business practices" in connection the sale of carpet materials and services, and were ordered to pay $265,645 as partial restitution. Id. at 766. The bankruptcy court held that § 523(a)(7) "should not be extended to include civil restitution judgments obtained by the State on behalf of victims of a consumer fraud scheme, because they are primarily `compensation for actual pecuniary loss.'" Id. at 773. The court based this decision in part on the absence of the "compelling state interest in the criminal sentencing process that was key" in Kelly. Id.[7]
From these cases we draw the following conclusions to guide our decision. First, we must look at the civil restitution order in light of the purposes of the underlying state statutory scheme in order to determine whether the order was made to vindicate the State's interest in "punishment," Kelly, 479 U.S. at 53, 107 S.Ct. at 362-63, or whether it was primarily intended to compensate the individual victims for their losses. In re Taite, 76 B.R. at 772. In making this assessment, we must keep in mind the fact that the overriding purpose of an order may be penal, even though "injured persons may thereby receive compensation for pecuniary loss." CCMV, 64 F.3d at 928. This is especially true where the "victim has no control over the amount of restitution awarded or over the decision to award restitution." Kelly, 479 U.S. at 52, 107 S.Ct. at 362. A restitution order is penal as long as it is not compensation for actual pecuniary loss incurred by the government. CCMV, 64 F.3d at 928.
We turn now to an analysis of the specific restitution order in this case. That order was issued against Towers pursuant to the Illinois Consumer Fraud and Deceptive Practices Act and provided as follows:
Percy Middleton and James Towers are hereby ordered to pay the amount of Two Hundred Ten Thousand Eighty Two Dollars and Thirty Four Cents ($210,082.34) as restitution to the consumers harmed by defendants' unlawful acts and business practices, as provided by Section 7 of the Consumer Fraud Act. A list of the names and addresses of consumers and the amount of the restitution to each is attached as Appendix A.
(Appellant Doc. 1 at 4). Applying the guidelines developed above, we find that the overriding purpose of this restitution order was to vindicate the State's interest in punishing wrongdoing, not to directly compensate the victims of Towers' fraudulent activities. As such, we find that the civil restitution order at issue in this case is not dischargeable under § 523(a)(7).
This conclusion is supported by the text of Section 7 of the Illinois Consumer Fraud and Deceptive Practices Act, which formed the basis for the state court's order, as well as the Act's stated legislative purpose. Section 7 provides in relevant part as follows:
Whenever the Attorney General or a State's Attorney has reason to believe that any person is using, has used, or is about *1017 to use any method, act or practice declared by this Act to be unlawful, and that proceedings would be in the public interest, he or she may bring an action in the name of the People of the State against such person to restrain by preliminary or permanent injunction the use of such method, act or practice. The Court, in its discretion, may exercise all powers necessary, including but not limited to: . . . restitution.
815 ILCS 505/7. According to section 7, the Act is designed to protect the public interest through the prevention of unlawful business practices. Although the Act is not exclusively penal, it is designed "to protect Illinois consumers, borrowers, and businessmen against fraud, unfair methods of competition, and other unfair and deceptive business practices. The Act is clearly within the class of remedial statutes which are designed to grant remedies for the protection of rights, introduce regulation conducive to the public good, or cure public evils." Scott v. Association for Childbirth at Home, International, 88 Ill.2d 279, 58 Ill.Dec. 761, 766, 430 N.E.2d 1012, 1017 (1981). Thus, even though the order specifies names of injured consumers and the amounts owed to each, the context in which the order was imposed  as the result of an action brought by the State to prevent fraudulent and deceptive trade practices  undermines the conclusion that it was compensatory. Kelly, 479 U.S. at 52, 107 S.Ct. at 362.
Towers disputes this conclusion, arguing instead that there "is no basis anywhere in the common law or in plaintiff's pleading to justify calling the award anything other than pecuniary restitution to specific consumers listed in the Judgment . . ." (Appellee Br. at 4). On this point the bankruptcy court agrees with Towers, stating that because "the state court judge separately provided for penalty, costs and restitution, it is clear that the restitution must be different from a penalty or a cost, and that the state court judge intended the restitution to be treated as restitution . . ." (July 7 order at 19). However, the fact that specific consumers are listed in the restitution order does not require that we view the order as compensatory and not pecuniary. CCMV, 64 F.3d at 928. Here, other considerations militate against a finding that the order was purely compensatory. In addition to the textual support from the Illinois Consumer Fraud Act itself, we also note that the victims in this case had no control over the amount of the restitution award and are not entitled to recover any monies awarded to the State. See Kelly, 479 U.S. at 52, 107 S.Ct. at 362. Moreover, the order was not issued to recover any pecuniary loss incurred by the government and therefore should be treated as a nondischargeable debt under § 523(a)(7). CCMV, 64 F.3d at 928.
Therefore, in conclusion, we find that the restitution order issued by the state court in this case is properly characterized as a debt excepted from discharge under § 523(a)(7). As a result, we reverse the bankruptcy court's contrary finding and grant the State's motion for summary judgment on this issue. We note again, however, that this issue is not without ambiguity and is one that is ripe for resolution by the appellate court.

CONCLUSION
For the foregoing reasons, the bankruptcy court's July 7 order is reversed in part and the appellant State of Illinois' motion for summary judgment is granted.
NOTES
[1] The State has subsequently conceded that its investigative costs are dischargeable in both cases because they are not within the scope of 11 U.S.C. § 523(a)(7).
[2] In its complaint to determine dischargeability, the State initially alleged that the $210,082.34 in restitution was not dischargeable under §§ 523(a)(2) and/or (a)(4) of the Bankruptcy Code. The bankruptcy court noted that the statute of limitations for bringing certain dischargeability actions imposed by Fed.R.Bankr.P. 4007 had already run, thus barring dischargeability actions under those sections. Since the State conceded this much and changed its position in its motion for summary judgment, the bankruptcy court decided to treat the complaint as one brought entirely under § 523(a)(7) of the Bankruptcy Code (July 7 order at 11, n. 6). We will do the same.
[3] Although the bankruptcy court found the asymmetrical treatment of federal and state court restitution troubling, it concluded it must accept that result since "[f]or whatever reason, Congress did not include state court orders within the scope of section 523(a)(13) of the Code" (July 7 order at 18).
[4] Section 1328(a)(3), which applies in proceedings initiated under Chapter 13 of the Bankruptcy Code, provides in relevant part as follows:

(a) As soon as practicable after completion by the debtor of all payments under the plan, . . . the court shall grant the debtor a discharge of all debts . . ., except any debt 
(3) for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime.
11 U.S.C. § 1328(a)(3).
[5] Although the bankruptcy court did not rule on the merits of this issue, we find it appropriate for us to do so here, rather than remand to the bankruptcy court, since the parties in this case both have briefed the issue extensively to the bankruptcy court and here on appeal.
[6] Towers argues that CCMV is not applicable in the instant case because the doctrine of collateral estoppel does not apply. However, as already explained by the bankruptcy court judge, (July 7 Order at 13), the collateral estoppel preclusive effect of the final judgment in this case is irrelevant to this court's determination of whether the restitution order is nondischargeable under § 523(a)(7) since that subsection does not require a showing of culpability.
[7] The court also relied heavily on the fact that granting automatic nondischargeability under § 523(a)(7) would create an asymmetrical outcome, depending on who filed the complaint, the State or individual creditors. The court noted that "[i]f the actual victims had obtained their own fraud judgments against Debtors, . . . they could have filed complaints to determine the nondischargeability of their restitution awards under 11 U.S.C. § 523(a)(2)." Id. It concluded that the "identity of the creditor holding a civil restitution award should not control whether the bankruptcy court is deprived of its exclusive jurisdiction to determine dischargeability of compensatory civil fraud judgments. Such a result would be contrary to one of the major thrusts of the Bankruptcy Reform Act of 1978  to classify claims, not creditors." Id. We do not address the relevance of this issue here since, as noted above, the statute of limitations for any claims under § 523(a)(2) has expired.