**In re Calvin D. OTT, Debtor.**

**STATE OF ARIZONA, Plaintiff,**

**v.**

**Calvin D. OTT, Defendant.**

**Bankruptcy No. 96–14969.**
**Adversary No. 97–03704.**

United States Bankruptcy Court,
W.D. Washington.

Feb. 11, 1998.

Order Denying Consideration
March 10, 1998.

---

Richard L. Pope, Jr., Seattle, WA, for Calvin D. Ott.

Mary C. Lobdell, Assistant Attorney General, State of Washington, Seattle, WA, for State of Arizona.

## DECISION ON MOTION FOR SUMMARY JUDGMENT

PHILIP H. BRANDT, Bankruptcy Judge.

The State of Arizona ("Arizona" or "State") moves for summary judgment against Defendant–Debtor Calvin D. Ott ("Ott"), seeking declaratory judgment that its judgment requiring him to disgorge $1,394,000.00 under Arizona's Racketeering Act (Arizona Revised Statutes ("A.R.S.") § 13–2314) is nondischargeable under the Bankruptcy Code.[1] I will grant the motion.

### I. ISSUES

A. Is Arizona's judgment nondischargeable under § 523(a)(7)?

B. Does the three-year limitation of § 523(a)(7)(B) apply to the Arizona Racketeering Act's disgorgement remedy?

C. Does the Full Faith and Credit Statute or the *Rooker–Feldman* doctrine bar this court from considering Ott's collateral attacks on the judgment?

### II. BACKGROUND

The parties agree that no material facts are in dispute.

In November of 1989, Ott was convicted of several felonies, including obstructing a criminal investigation and illegally possessing and selling narcotics. He appealed these convictions. In 1994, the Arizona Court of Appeals overturned Ott's convictions, on the ground that the superior court had erred in allowing the testimony of witnesses on uncharged crimes and improperly applying sentencing rules. In 1995, Ott entered an "Alford" guilty plea to possessing and selling cocaine and illegally conducting an enterprise. A criminal defendant entering an Alford plea voluntarily, knowingly, and understandingly consents to a prison sentence while remain-

---

1. 11 U.S.C. §§ 101–1330: Absent contrary indication, all section and chapter references are to the Bankruptcy Code, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure. "FRBP" references are to the Federal Rules of Civil Procedure, and "LBR" refers to the Local Rules of Bankruptcy Procedure for the Western District of Washington.

ing unwilling or unable to admit to having participated in a crime. *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970).

In 1988, while the criminal charges were pending, Arizona brought civil proceedings against Ott under the Arizona Racketeering Act:

> 'Racketeering' means any act, including any preparatory or completed offense, which is committed for financial gain, which is chargeable or indictable under the laws of the state in which the act occurred ..., involving: ...(k) Prohibited drugs, marijuana or other prohibited chemicals or substances....

A.R.S. § 13–2301(D)(4) (1997). The Act grants jurisdiction to the superior court to remedy racketeering by issuing appropriate orders, including

> 7. Payment to the general fund of the state or county as appropriate of an amount equal to the gain that was acquired or maintained through an offense included in the definition of racketeering ... [or illegal control of, or illegally conducting, an enterprise]. [citations omitted]

A.R.S. § 13–2314(D)(7). The Coconino County Superior Court entered a judgment of $1,871,100 in favor of the State of Arizona on 6 March 1989.

Ott appealed to the Arizona Court of Appeals, which affirmed liability under Arizona's Racketeering Act, but reversed and remanded as to the judgment amount. *State v. Ott*, 167 Ariz. 420, 808 P.2d 305 (1990).

On remand, the issue of damages was tried to a jury, which returned a verdict on 16 July 1992 in favor of the State of Arizona, Coconino County, requiring Ott to disgorge $1,394,-000, plus interest at 10% per annum from 14 December 1988, until paid. Ott appealed this judgment to the Arizona Court of Appeals, which affirmed. Ott then petitioned the Arizona Supreme Court for review. In connection with that petition, Ott filed a Motion to Confer Jurisdiction on the Superior Court to consider a Rule 60(c) motion. The Arizona Supreme Court denied both the Motion to Confer Jurisdiction and Ott's Petition for Review.

Ott thereafter filed for Chapter 7 relief, and Arizona commenced this adversary proceeding with its timely Complaint for Declaratory Judgment to Determine Dischargeability of a Debt. Ott has received a discharge from his dischargeable debts.

## III. JURISDICTION

This is a core proceeding within this court's jurisdiction. 28 U.S.C. §§ 1334 and 157(b)(2)(I); GR 7, Local Rules, W.D. Wash.

## IV. DISCUSSION

A. *Is Arizona's judgment nondischargeable under § 523(a)(7)?*

The Bankruptcy Code provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> ...
>
> (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—
>
>> (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
>>
>> (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition.

11 U.S.C. § 523(a)(7). The creditor seeking an exception to dischargeability bears the burden of proof by the preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Exceptions to discharge are strictly construed against the objecting creditor and liberally in favor of the Debtor. *In re Bugna*, 33 F.3d 1054, 1059 (9th Cir.1994).

The statute provides a three-part test to determine dischargeability of a debt owed to a governmental entity: A debt is nondischargeable under § 523(a)(7) if (1) it is a fine, penalty, or forfeiture; (2) is payable to and for the benefit of a governmental unit; and (3) is not compensation for the government's actual pecuniary loss. § 523(a)(7); *Com-*

*monwealth of Kentucky, Natural Resources & Environmental Protect. Cabinet v. Seals,* 161 B.R. 615, 618 (W.D.Va.1993).

■ It is undisputed that the penalty at issue meets the first two prongs of the statutory test: that it is a fine, penalty, or forfeiture, and that it is payable to and for the benefit of a governmental unit.

The third element is at issue. The statute does not distinguish between civil and criminal penalties and thus extends to both categories. 4 L. King, et al., *Collier on Bankruptcy,* ¶ 523.13 (15th Ed.1997). While *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), held fines and conditions imposed in a criminal sentence nondischargeable under § 523(a)(7), nothing in that case limited the exception to criminal penalties. The Supreme Court has not considered the question, but courts in this circuit (and elsewhere) have routinely applied this discharge exception to civil fines and penalties. *E.g. Poule v. Registrar of Contractors of California (In re Poule),* 91 B.R. 83 (9th Cir. BAP 1988) (civil penalties for violation of contractor's licensing law); *Stevens v. Commercial Collection Service, Inc. (In re Stevens),* 184 B.R. 584 (Bankr.W.D.Wash.1995) (civil traffic fines); *In re Taite,* 76 B.R. 764 (Bankr. C.D.Cal.1987) (civil penalties for consumer fraud).

However, there are no reported cases applying the § 523(a)(7) exception to disgorgement under the civil provisions of state or federal racketeering statutes.

Strictly speaking, disgorgement is a species of forfeiture, which is defined as "loss of some right or property as a penalty for some illegal act." *Black's Law Dictionary* 650 (6th ed.1990). Forfeiture provisions in racketeering statutes apply to property used in the commission of a crime as well as property acquired with the proceeds of the crime. *Id.,* citing 18 U.S.C.A. § 981, 982; 21 U.S.C.A. § 853. The Arizona Racketeering Act contains separate provisions dealing with "in personam forfeiture" of such property (A.R.S. §§ 13–2314(D)(6) and 13–2314.01(D)), which are not at issue in this case.

Here, the judgment requires Ott to pay over an amount equal to his receipts from the cocaine trade, and the determinative question is whether the disgorgement is compensation for actual pecuniary loss. Courts looking at this question in the context of civil penalties have examined whether the penalties were assessed to compensate the governmental unit for actual expenses incurred. *See, e.g. Caggiano v. Office of the Parking Clerk of the City of Boston,* 34 B.R. 449 (Bankr. D.Mass.1983); *Commonwealth of Kentucky, Natural Resources & Environmental Protect. Cabinet v. Seals,* 161 B.R. 615, 620 (W.D.Va.1993).

In *Caggiano,* the court found some portions of the parking fines at issue to be dischargeable and others nondischargeable. It determined that the portions of the fines imposed to facilitate regulation of traffic and parking, and the surcharge to encourage efficient and expedient collection, were nondischargeable, while the recovery for the work and expense involved in providing notice of hearing and forwarding papers to the Registry of Motor Vehicles was dischargeable. 34 B.R. at 450–51.

In *Seals,* the court considered three factors in making its determination that the penalties at issue were not compensatory: (1) whether the calculation of the penalty bore any relationship to the costs incurred by the government; (2) whether there was any requirement that the funds be used to mitigate the particular damage caused by a violation; and (3) whether the government had suffered any actual pecuniary loss. 161 B.R. at 620–21.

The *Seals* analysis is a useful framework for determining whether the disgorgement is compensation for actual pecuniary loss:

1. *Does the calculation of the penalty bear any relationship to the costs incurred by the government?*

The plain language of A.R.S. § 13–2314(D)(7) provides that the disgorgement amount should be "an amount equal to the gain that was acquired or maintained through a [racketeering] offense . . . ." Arizona's initial summary judgment was based upon an estimate of the number of Ott's illegal transactions, the amount of narcotics

he sold in each transaction, and the price per ounce he charged. *State v. Ott,* 167 Ariz. 420, 428, 808 P.2d 305, 313 (1990). After remand, this issue was tried to a jury, which presumably calculated the appropriate amount to be $1,394,000.00 in the same fashion. At least, nothing in Ott's responses to this motion suggests anything to the contrary.

This methodology is consistent with the overall purpose of racketeering statutes. Congress enacted 18 U.S.C. § 1961, the Racketeer Influenced and Corrupt Organizations (RICO) Act, "to remove the profit from organized crime by separating the racketeer from his dishonest gains." *Russello v. United States,* 464 U.S. 16, 28, 104 S.Ct. 296, 303, 78 L.Ed.2d 17 (1983). State racketeering statutes, including Arizona's, are based upon federal law. *State v. Schwartz,* 188 Ariz. 313, 935 P.2d 891, 895 (1997).

Nothing in A.R.S. § 13–2314(D)(7) requires any consideration of the costs incurred by the government, nor does the record indicate any evidence of actual damages incurred by the State was presented to the jury. The first criterion is met.

### 2. Must the funds be used to mitigate the particular damage caused by a violation?

Rather than directing the funds disgorged to be used to mitigate damage caused by the illegal drug transactions, Arizona's statute allows them to be used for funding anti-crime programs generally, and for witness protection programs, investigation, and prosecution:

> Monies in the fund may be used for the funding of gang prevention programs, substance abuse prevention programs, substance abuse education programs and witness protection... or for any purpose permitted by federal law relating to the disposition of any property that is transferred to a law enforcement agency. Monies in the fund may be transmitted by the attorney general on behalf of a department or agency of this state or any political subdivision of this state to the Arizona drug and gang policy council for the funding of gang prevention programs,

substance abuse prevention programs and substance abuse education programs. Monies in the fund may be used for the investigation and prosecution of any offense included in the definition of racketeering... including civil enforcement. [citations omitted]

A.R.S. § 13–2314.01(E). Nothing in this provision requires any of these costs to be related to any particular damage caused by Ott's offenses, nor must the monies be used to cover governmental costs in investigating and prosecuting Ott. The judgment meets the second criterion.

### 3. Has the state suffered any actual pecuniary loss?

■ Nothing in the record indicates the state made any showing of actual loss at trial. Although Arizona and its citizens presumably suffered some generalized losses from Ott's racketeering activities, the "actual pecuniary loss" element of § 523(a)(7) requires more than a generalized loss for the debt to be dischargeable. *See, e.g., Seals,* 161 B.R. 615 (W.D.Va.1993); *Caggiano v. Office of the Parking Clerk of the City of Boston,* 34 B.R. 449 (Bankr.D.Mass.1983).

*Ott,* citing *In re Taite,* 76 B.R. 764 (Bankr. C.D.Cal.1987), argues that the disgorgement is compensatory rather than punitive. However, *Taite,* which involved civil penalties and civil restitution for consumer fraud violations, does not answer the question of whether disgorgement is compensation for actual pecuniary loss. The court found the civil penalties to be punitive and non-dischargeable, and the civil restitution dischargeable, as it was based on the victims' actual pecuniary losses, and was to be paid over to them: "Civil restitution is, by its very nature, *primarily* intended to compensate victims for their losses." [emphasis in original; 76 B.R. 764, 772] In citing to *Taite,* Ott apparently assumes that civil restitution is analogous to the disgorgement remedy at issue here. But it is the civil penalties, not tied to any particular loss, which more nearly approximate Arizona's disgorgement judgment.

■ Ott makes much of the "punitive and retributory" versus "remedial and compensa-

tory" dichotomy that emerged in the parties' arguments in the state court proceedings. He implicitly contends that Arizona should be collaterally estopped from arguing that the racketeering statute is punitive, rather than compensatory, because Arizona argued in the state proceedings that the statute was remedial and compensatory.

Even if I were inclined to entertain such an implicit argument, it would fail, as the issues in the two proceedings differ. The Arizona courts were considering whether the disgorgement violated the Double Jeopardy Clause. U.S. Const. Amend V. Under the U.S. Supreme Court precedents existing at the time of the Arizona state court action, the Double Jeopardy analysis required determining whether a civil penalty constituted "punishment." This was done by "a particularized assessment of the penalty imposed and the purposes that penalty may fairly be said to serve." *United States v. Halper*, 490 U.S. 435, 448, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989). *Halper* was abrogated by *Hudson v. United States*, —— U.S. ——, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997)

■ In contrast to the Double Jeopardy analysis, the test under § 523(a)(7) is whether the fine, penalty or forfeiture is compensatory, rather than whether it is categorized "remedial" or "punitive". While some courts have referred to noncompensatory fines as "penal" or "punitive" *e.g.*, *Seals*, 161 B.R. at 620–21, and *Taite*, 76 B.R. at 769, it does not follow that a nonpunitive or remedial sanction is necessarily compensation for actual pecuniary loss. Compensation is only one remedial goal that may be served: another is that of separating the criminal from ill-gotten gain. *State v. Frodert*, 84 Wash.App. 20, 27, 924 P.2d 933, 937–38 (1996) (discussing RCW § 9A.82.100(4)(g), substantively identical to A.R.S. § 13–2314(D)(7)). Depriving a criminal of his illicit gain is not the same as compensating the state for actual pecuniary loss.

Ott cites *United States v. Carson*, 52 F.3d 1173 (2nd Cir.1995), for the proposition that A.R.S. § 13–2314(D)(7) is compensatory. In *Carson*, the Second Circuit Court of Appeals, interpreting the federal RICO disgorgement provision, cited *Tull v. United States*, 481

U.S. 412, 422–23, 107 S.Ct. 1831, 1838, 95 L.Ed.2d 365 (1987), for the proposition that disgorgement is compensatory, as opposed to punitive, in nature. *Carson*, 52 F.3d at 1183. The Third Circuit there was engaged in a Double Jeopardy analysis under *Halper*, and did not articulate any loss or injury there being compensated.

■ Finally, nothing in § 523(a)(7) requires a fine, penalty, or forfeiture to be punitive, deterrent, or rehabilitative to be nondischargeable. *In re Kish*, 204 B.R. 122, 129 (Bankr.D.N.J.1997), *rev'd on other grounds*, 212 B.R. 808.

All three criteria of the *Seals* analysis, and all three elements of § 523(a)(7), are satisfied.

### B. Does the three-year limitation of § 523(a)(7)(B) apply?

■ Ott argues that the exclusion for penalties arising out of transactions or events occurring more than three years before filing applies to all fines, penalties and forfeitures, not just tax penalties. Because the Ninth Circuit has only considered the construction of § 523(a)(7)(B) in a tax case, *McKay v. United States*, 957 F.2d 689, 693 (9th Cir. 1992), it did not address the possibility that the three year limit might apply to anything other than tax penalties. Nor has any other circuit.

Ott cites *In re Corbly*, 149 B.R. 125 (Bankr S.D.1992), in which the court found non-tax penalties to be dischargeable under this exclusion, based on a rule of liberal construction in favor of the debtor and "plain meaning." The other three lower court cases considering the issue have reached the opposite conclusion: *Seals*, 161 B.R. at 618 n. 8; *In re Ricketson*, 190 B.R. 684, 687 (Bankr. M.D.Fl.1995); and *In re Jimmo*, 204 B.R. 655, 658–659 (Bankr.D.Ct.1997). The latter cases are more persuasive: the lettered subparagraphs of § 523(a)(7) restrict the exception to the exception to the exception to discharge, and Congress modified the penalty which is that exception to exception to exception with "tax".

The three year limit does not apply.

**C.** *Is this court barred from considering Ott's collateral attacks on the underlying judgment?*

██ Although not addressed in his response to Arizona's motion for summary judgment, Ott's Answer to Arizona's Complaint raised the collateral defenses to the state court judgment that (a) the judgment is void because Ott was prohibited from testifying at trial, and (b) the judgment violates the Double Jeopardy Clause. However, federal courts are bound by 28 U.S.C. § 1738 to give full faith and credit to state court judgments. *In re Chang,* 210 B.R. 578 (9th Cir. BAP 1997)(citing *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985)).

Further, under the *Rooker–Feldman* doctrine, this court lacks subject matter jurisdiction to review the state court decision. *See Worldwide Church of God v. McNair,* 805 F.2d 888, 890 (9th Cir.1986) (citing, among others, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)). Once a state court has reached final judgment, the *Rooker–Feldman* doctrine bars a lower federal court (including a bankruptcy court) from reviewing the state court's decision for errors in construing federal law or constitutional claims that are inextricably liked with the state court's judgment. *Worldwide Church,* 805 F.2d at 892; *Audre, Inc. v. Casey (In re Audre, Inc.),* 216 B.R. 19 (9th Cir. BAP 1997); *In re Quality Laser Works,* 211 B.R. 936, 942 (9th Cir. BAP 1997).

The Arizona judgment is final. The Arizona Court of Appeals affirmed the trial court's judgment that Ott disgorge his cocaine proceeds. That finding was refused review by the Arizona Supreme Court. In this nondischargeability action, Ott now asks the bankruptcy court to review his constitutional claims (right to testify, double jeopardy) inextricably linked to that judgment. The Full Faith and Credit statute and the *Rooker–Feldman* doctrine bar me from doing so.

## V. CONCLUSION

Nondischargeability of disgorgement of racketeering proceeds is in keeping with the policy behind discharge exceptions in general and 523(a)(7) in particular. The fresh start of a bankruptcy discharge is intended to provide a new beginning for honest but unfortunate debtors, *Grogan v. Garner,* 498 U.S. 279, 280, 111 S.Ct. 654, 655, 112 L.Ed.2d 755 (1991), not racketeers. Section 523(a)(7) "creates a broad exception [from discharge] for all penal sanctions, whether they be denominated fines, penalties, or forfeitures." *Kelly v. Robinson,* 479 U.S. 36, 52, 107 S.Ct. 353, 362, 93 L.Ed.2d 216 (1986). While *Kelly* involved the dischargeability of criminal restitution and not a civil penalty, the policies enumerated in that case apply equally to the disgorgement at issue here.

There are no issues of material fact, and summary judgment is appropriate. FRCP 56(c), incorporated by Rule 7056. As I have resolved the legal issues in favor of Arizona, I will grant summary judgment declaring the judgment nondischargeable.

## DENIAL OF MOTION FOR RECONSIDERATION

██ Defendant Calvin D. Ott has moved for reconsideration, seeking reversal and vacation of the Order Granting Summary Judgment implementing the Decision on Motion for Summary Judgment of 10 February 1998, and amendment of that Decision. I have neither requested a response from Arizona nor set the matter for hearing, which is discretionary under LBR 9013-1(h).[1] Ott relies on A.R.S. § 13-2318, not previously cited, in arguing that the civil disgorgement judgment is compensation for actual pecuniary loss. I will deny the motion, for two reasons:

First, because the issue could have been raised at hearing. *Weiner v. Perry, Settles, & Lawson, Inc.,* 208 B.R. 69, 72 (9th Cir. BAP 1997); *Rosenfeld v. U.S. Dept. of Justice,* 57 F.3d 803, 811 (9th Cir.1995).

---

1. The abbreviations used in the Decision are used herein.

Second, A.R.S. § 13–2318 does not change the outcome. That section provides:

> The court shall not reduce or increase the judgment in a civil action under this title because of the imposition or failure to impose a sanction in a separate criminal prosecution involving the same conduct but shall determine the civil judgment solely according to the civil remedies that are provided under this chapter and chapter 39[2] of this title, including the amount of injury to the state. Injury to the state includes:
>
> 1. The expenditure of any public monies, including the expenses of law enforcement and prosecutors in pursuing civil and criminal remedies.
>
> 2. The amount of money or the value of other property that is exchanged or that would foreseeably be exchanged for prohibited drugs, marijuana or other prohibited chemicals or substances or that is used, made available to another or otherwise involved in a violation of section 13–2317. The exchange of a prohibited chemical or substance for gain is a foreseeable consequence of the manufacture, production, transportation or sale of the prohibited chemical or substance.
>
> 3. The acquisition or gain of proceeds as defined in section 13–2314 of any offense included in the definition of racketeering as defined in section 13–2301, subsection D, paragraph 4. [footnote added]

In essence, Ott's argument is that "injury to the state", as defined in the quoted section, and "actual pecuniary loss", as used in § 523(a)(7) are identical. No authority is advanced for that proposition.

While it is easy to see that "actual pecuniary loss" is comprehended within the plain meaning of "injury to the state", it is not self-evident that the categories are coextensive. Subsection 1 of the A.R.S. § 13–2318 clearly describes pecuniary losses to the State, while subsection 2 almost certainly does not. Short of the manifestly absurd presumption that only the State of Arizona purchases prohibited drugs, etc., within the state, subsection 2 describes injury which is almost completely outside any reasonable definition of pecuniary loss to the State. Even making

the further economically irrational assumption that the purchase of an illegal substance is a total loss to the purchaser, that loss is borne by persons or entities other than the state. Finally, subsection 2 includes purely hypothetical losses within "injury to the State": what the illegal substances would bring, *if sold.* Subsection 3 adds nothing to A.R.S. § 13–2314, considered in the Decision.

■ Arizona courts interpret its statutes by giving words their ordinary meanings absent a contrary contextual requirement, and give unambiguous statutes conclusive effect absent clearly expressed contrary legislative intent. *Mail Boxes, etc., U.S.A. v. Industrial Commission of Arizona,* 181 Ariz. 119, 121, 888 P.2d 777 (1995), and cases cited. Likewise, bankruptcy courts, while construing liberally in favor of debtors, must give the nondischargeability provisions a plain reading. *In re Bugna,* 33 F.3d 1054, 1058–1059 (9th Cir.1994).

Applying those principles to the Arizona statute quoted above, and § 523(a)(7), debtor's argument for reconsideration fails: A.R.S. 13–2318's non-exclusive listing of components of "injury to the state" comprehends much beyond Arizona's "actual pecuniary loss."

I will enter an Order denying the motion.

**2.** A.R.S. 13–2318 *et seq.* regarding criminal forfeiture.