

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-25-1999

# USA v. Pelullo

Precedential or Non-Precedential:

Docket 96-1398

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"USA v. Pelullo" (1999). *1999 Decisions*. Paper 143.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/143

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 25, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-1398

UNITED STATES OF AMERICA

v.

LEONARD A. PELULLO,
        Appellant

Appeal from the United States District Court
For the Eastern District of Pennsylvania
D.C. No.: 91-cr-00060
District Judge: Honorable Robert F. Kelly

Argued: January 28, 1999

Before: BECKER, Chief Judge,
SCIRICA and ROSENN, Circuit Judges.

(Filed May 25, 1999)

        Richard A. Ripley (Argued)
        Howrey & Simon
        1299 Pennsylvania Avenue, N.W.
        Washington, D.C. 20004-2402

        Allen B. Dubroff
        Frank & Rosen
        1835 Market Street
        Suite 320
        Philadelphia, PA 19103
        Counsel for Appellant

          Frank A. Labor, III (Argued)
          Office of United States Attorney
          615 Chestnut Street, Suite 1250
          Philadelphia, PA 19106
          Counsel for Appellee

OPINION OF THE COURT

ROSENN, Circuit Judge.

In an effort to meet this nation's changing economic and social developments, Congress occasionally enacts legislative enactments that are in tension with each other. This appeal presents such a situation and a legal issue with highly important consequences. The genesis for the appeal is the defendant's conviction for a violation of the federal wire fraud statute, one count of racketeering in violation of 18 U.S.C. S 1962, and a special forfeiture verdict. Based upon the jury's conviction of the defendant, Leonard A. Pelullo, and its special forfeiture verdict, the District Court entered a criminal forfeiture order under 18 U.S.C.S 1963 of the defendant's personal residence as part of his sentence.

Following the imposition of sentence, the Government initiated an ancillary proceeding in the District Court to adjudicate third party interests in the forfeited property. The District Court authorized the United States Marshal Service (Marshal Service), inter alia, to dispose of the defendant's forfeited residence immediately at a judicial public sale. After unsuccessful efforts to stay the sale, the defendant filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania, and anticipated that this would invoke the automatic stay provision of the Bankruptcy Code pursuant to 11 U.S.C. S 362. Despite actual notice of the Chapter 11filing prior to the scheduled hour for the sale, the Government proceeded with the public auction of the property and consummated the sale. Subsequently, the Government obtained an ex parte temporary protective order, later made permanent, barring the defendant from pursuing the Chapter 11

2

bankruptcy with respect to any asset forfeited to the United States. The defendant timely appealed. We affirm.

I.

In January 1995, a jury convicted Pelullo of forty-six counts of wire fraud in violation of 18 U.S.C. S 1341 and one count of racketeering in violation of 18 U.S.C.S 1962. The appeals from the criminal conviction and from the District Court's permanent protective order were heard by this panel contemporaneously. We affirmed the criminal conviction on March 18, 1999. United States v. Pelullo, ___ F.3d ___ (3d Cir. 1999). The jury's special verdict under 18 U.S.C. S 1963(a) forfeited Pelullo's interest in racketeering proceeds of $1.3 million and a Montana ranch that the jury found Pelullo had acquired with racketeering proceeds.

In conjunction with sentencing the defendant to a term of confinement in prison on September 14, 1995, the District Court ordered the forfeiture of Pelullo's interest in $1.3 million of racketeering proceeds and the Montana ranch. At the same time, the Court ordered a forfeiture of Pelullo's interest in his residence on Brickell Avenue in Miami, Florida as a substitute asset for the Montana ranch under 18 U.S.C. S 1963(m). The following day, the Government commenced an ancillary forfeiture proceeding to adjudicate third party interests in the forfeiture assets under 18 U.S.C. S 1963(l). Three days later, because Pelullo had not made any mortgage payments due on the Miami property since his indictment in February 1991, a Dade County, Florida, circuit court entered a mortgage foreclosure judgment against the property and Pelullo. The foreclosure judgment amounted to approximately $3 million, with accrued interest at 8% per annum. The Government, in an effort to forestall depletion of the net equity of the property through the accrual of additional interest and taxes, applied for and obtained an order to sell publicly the Miami property before completion of the ancillary forfeiture and the entry of a final order.

On October 11, 1995, the District Court authorized the Marshal Service to sell the property by interlocutory sale. None of the parties who had asserted an interest in the

3

asset, despite notice, opposed the interlocutory sale, which the Marshal Service scheduled for November 17, 1995. However, on November 8, 1995, Pelullo appealed to this court to stay the sale; we denied the stay.

On November 17, 1995, just prior to the scheduled sale, Pelullo filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania and served notice thereof upon the Marshal Service by facsimile immediately prior to the scheduled hour for sale. Despite notice of the filing of the petition and of the automatic stay provision of the Bankruptcy Code, 1 the Government proceeded with the public sale on advice of the United States Attorney's office that the automatic stay provision of the Bankruptcy Code did not apply to this criminal forfeiture proceeding. The mortgage holder purchased the property for a sum less than the outstanding mortgage balance.

Pelullo, asserting that the Miami property was an asset of his debtor's estate and that the sale violated the automatic stay of the Bankruptcy Code, thereupon filed a motion for contempt against the Marshal Service in the bankruptcy court. The Government requested that the motion be denied and simultaneously applied to the District Court for a protective order under 18 U.S.C. S 1963(e). The District Court entered a protective order barring Pelullo and his counsel from pursuing his bankruptcy case with respect to any asset ordered forfeited to the Government. On April 25, 1996, the District Court made the temporary protective order permanent. Pelullo timely appealed to this court. Title to the Miami residence has been transferred by a Marshal's deed to a Florida corporation designated by the former mortgage holder; the principals of the corporation are also principals of the mortgage holder.

_____

1. The automatic stay provision of the United States Bankruptcy Code is codified under 11 U.S.C. S 362. The filing of a petition in the bankruptcy court pursuant to Section 362(a) ordinarily automatically acts as a specific and definite order of the bankruptcy court to restrain creditors from continuance of judicial process or collection efforts against the debtor.

II.

The crucial question on appeal is whether Pelullo's filing of the bankruptcy petition effectively divested the District Court of jurisdiction over the forfeited assets and transferred jurisdiction over them to the bankruptcy court subject to the automatic stay, thus immobilizing the Government's enforcement of the criminal forfeiture sentence imposed by the District Court. Pelullo states the issue in these terms: whether the District Court erred in granting a protective order prohibiting him from including his residence as an asset in his pending Chapter 11 case because that asset was listed as a substitute in the order of forfeiture dated September 11, 1995 and "in failing to recognize pursuant to Sections 362(a)(1) and 362(b)(5) of the Bankruptcy Code that sale of appellant's residence was automatically stayed by the filing of the Chapter 11 petition."

A.

A threshold question, however, that confronts us is one raised by the Government. It contends that we lack appellate jurisdiction because the order appealed from is not a final order under 28 U.S.C. S 1291 or the collateral order doctrine. Moreover, the Government asserts that the order is not appealable as an interlocutory injunction. It further notes that appellant's reliance upon 28 U.S.C. S 1334 for appellate jurisdiction is erroneous. That section, it argues, confers subject matter jurisdiction over bankruptcy cases upon the District Court but does not create jurisdiction in courts of appeals.

Under 28 U.S.C. S 1291, our jurisdiction is limited, with certain exceptions, to "appeals from all final decisions of the District Courts of the United States." As the Government aptly argues, the protective order at issue here, however, is an interlocutory order of the District Court.

Our scope of review of questions relating to jurisdiction is plenary. Caplan v. Fellheimer Eichen Braverman & Kaskey, 68 F.3d 828,834 (3d Cir. 1995). This court's decision in United States v. Nicolet, Inc., 857 F.2d 202 (3d Cir. 1988),

in which we were faced with a similar jurisdictional question, is instructive. In Nicolet, the Government initiated proceedings under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) against defendant Nicolet to recover funds expended to clean-up an environmental site that had once been owned by Nicolet. Id. at 203. At some point during the District Court proceedings, Nicolet filed a Chapter 11 petition for reorganization in the bankruptcy court. Id. Initially, the District Court stayed the proceedings pursuant to Section 362 but, later, vacated the stay and permitted the Government to pursue collection. Id. Nicolet appealed the vacation of the stay to this court. Id.

On appeal, we observed that Nicolet had appealed an interlocutory order that effectively served to lift the automatic stay of the Chapter 11 proceedings as to the government. Id. at 204. Although the stay of a civil action generally is interlocutory and not appealable, in bankruptcy cases, lifting the automatic stay and a denial of relief from the stay are appealable. Id. at 203. We further noted that if a motion to lift the stay had been brought in the bankruptcy court and had been granted by that court, this court's appellate jurisdiction to review that order would have been a certainty, as it would have been squarely within the grant of authority under 28 U.S.C. S 158(d). Id.2 However, because Nicolet appealed from a District Court order that involved a bankruptcy case but not an order of the bankruptcy court itself, we concluded that 28 U.S.C. S 1291, not 28 U.S.C. S 158(d), was available as a predicate for jurisdiction. Id. at 204.

We reasoned that the order at issue was so "inextricably intertwined with a pending bankruptcy proceeding," the more liberal appellate standards of finality applicable to appeals of bankruptcy court orders were appropriate. Id. We noted that in In re Amatex Corp., 755 F.2d 1034, 1039 (3d Cir. 1985), the concept of "finality" of an order in the

_____

2. Section 158(d) provides that "[t]he courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered [by the district courts in reviewing orders of bankruptcy judges]"

6

bankruptcy context was best described as a "functional approach." Nicolet, 857 F.2d at 204. We therefore concluded in Nicolet that for purposes of an appeal of a District Court order in a "bankruptcy setting," our appellate jurisdiction under Section 1291 "mirrors that under section 158(d)." Id.

In the case at bar, the District Court's order impacted significantly on a bankruptcy matter. The order also had the effect of lifting the automatic stay as to the Florida property, preventing the bankruptcy court from exercising jurisdiction over it, and authorizing the immediate sale of that property. Moreover, once the District Court made its order permanent, the order conclusively determined Pelullo's interest in the Florida property and enjoined him from even litigating his claims to it in the bankruptcy court. As in the District Court's order in Nicolet, "no further work need be done by the District Court" in the instant case as to the Florida property. Id. at 206. The order had all of the attributes of finality.

Accordingly, in light of the functional and pragmatic disposition enunciated in Nicolet, we conclude that the District Court's order is subject to appellate review.

B.

Turning now to the merits of the case, Pelullo claims that the District Court erred in granting the Permanent Protective Order. He submits that, once he filed a bankruptcy petition, the Miami property came under the jurisdiction of the bankruptcy court. Pelullo therefore argues that, because of the automatic stay provision, 11 U.S.C. S 362(a), the District Court was barred from proceeding with respect to the Miami property. He further contends that, even if it might have been appropriate to permit the forfeiture proceedings to continue, that decision should have been left to the bankruptcy court. Pelullo therefore concludes that the Marshal Service conducted no bona fide sale of the Miami property on November 17, 1995, and that the protective orders, temporary and permanent, were erroneous and an abuse of the Court's discretion.

On the other hand, the Government contends that Pelullo's Miami property never became subject to the

7

jurisdiction of the bankruptcy court, and therefore the Protective Orders were entirely appropriate. In particular, the Government contends that the Forfeiture Order entered on September 14, 1995, divested Pelullo of any interest in the Miami property. Accordingly, Pelullo havingfiled his bankruptcy petition on November 17, 1995, neither the automatic stay provision, S 362(a), nor any other provision of the Bankruptcy Code, applied to the property. The Government further notes that, under RICO, the District Court has full power to protect its jurisdiction over the forfeited property:

> Following the entry of an order declaring property forfeited, the court may, upon the application of the United States, enter such appropriate restraining orders or injunctions, require the execution of satisfactory performance bonds, appoint receivers, conservators, appraisers, accountants, or trustees, or take any other action to protect the interest of the United States in the property forfeited.

18 U.S.C. S 1963(e). Thus, the Government contends, the Protective Orders were perfectly legitimate. Because we conclude that the Forfeiture Order divested Pelullo of any interest in the property, we agree with the Government.

Section 1963 provides for criminal forfeiture proceedings against defendants to forfeit the proceeds of racketeering activities. Under RICO, the defendant's interest in certain kinds of property, such as property traceable to the proceeds of racketeering activity, is automatically forfeited to the Government upon the entry of a judgment that the property is of that type. See 18 U.S.C.S 1963(a). Under the doctrine of "relation back," the defendant's interest in property forfeited under S 1963(a) is divested at the time the racketeering activity upon which the conviction is predicated occurs. The defendant's interest in the property is vested in the government nunc pro tunc the time at which the criminal activity occurred. See S 1963(c) ("All right, title and interest in property described in subsection (a) vests in the United States upon the commission of the act giving rise to the forfeiture under this section."). In addition, if the Government proves that the racketeering activity created a certain amount of proceeds, but not all of that amount is

8

traceable to specific property of the defendant, the Government can then seek forfeiture of other assets of the defendant not related to the racketeering activities, which are referred to as "substitute assets." See 18 U.S.C. S 1963(m). Simultaneous with Pelullo's sentencing, the District Court granted the Government's motion to substitute the Miami property for the Montana ranch and ordered its forfeiture.

The Order of Forfeiture acts to divest the defendant of any remaining interest in the property. The forfeiture can only take effect upon the entry of a judicial order directing the forfeiture. See Shelden v. United States, 7 F.3d 1022, 1027 (Fed. Cir. 1993) ("Title to forfeited property transfers to the United States upon entry of a judgment of forfeiture." (citing United States v. Stowell, 133 U.S. 1, 17 (1890))). We reach our conclusion based on a consideration of the structure of criminal forfeiture proceedings, precedent on related subjects, and a close reading of the terms of the Forfeiture Order itself. Several aspects of the procedural structure of criminal forfeiture proceedings provide support for our holding. A criminal forfeiture proceeds in two steps. First, in conjunction with the criminal trial of the defendant, the factfinder determines whether the defendant had an interest in the allegedly forfeitable property that arose from his illegal activities. If so, the district court enters an order of forfeiture with respect to that property at the time of sentencing. In the second stage of proceedings, termed the ancillary proceeding, people other than the defendant may assert their interests in the property. See 18 U.S.C. S 1963(i). Following the ancillary proceeding, the district court may amend the order of forfeiture in accordance with its determination of the issues raised therein. See S 1963(i)(1).

Two particular aspects of this procedural structure are particularly significant. First, the order of forfeiture entered at sentencing is a final order with respect to the defendant from which he can appeal. See, e.g., United States v. Bennett, 147 F.3d 912 (9th Cir. 1998); United States v. Christunas, 126 F.3d 765 (6th Cir. 1997); United States v. Libretti, 38 F.3d 523 (10th Cir. 1994), affd , 516 U.S. 29 (1995). This rule is predicated on the assumption that a

9

forfeiture order conclusively determines all of the defendant's interest in the forfeited property. See Christunas, 126 F.3d at 768 ("A preliminary forfeiture order terminates all issues presented by the defendant and leaves nothing to be done except enforce by execution what has been determined."). Second and concomitantly, the defendant generally has no standing to participate in the ancillary proceeding that takes place after the forfeiture order is entered at sentencing. See Bennett, 147 F.3d at 914; Christunas, 126 F.3d at 769; see also Libretti, 38 F.3d at 527 (district court has no jurisdiction to consider defendant's claims to property once defendant hasfiled notice of appeal from order of forfeiture entered at sentencing). This lack of standing is set forth specifically in the statute, which provides that "any person, other than the defendant," may file a petition to initiate an ancillary proceeding to adjudicate his claim to the forfeited property. 18 U.S.C. S 1963(i)(2). This lack of standing suggests that the defendant no longer has an interest in the property. This conclusion is supported by the general body of law relating to forfeiture orders.

Finally, the September 1995 Forfeiture Order declares, in a straightforward manner: "[I]t is further ordered and decreed pursuant to 18 U.S.C. S 1963(m) that the interests of the defendant Leonard A. Pelullo in the following properties shall be forfeited to the United States of America: The real property located at 3031 Brickell Avenue, Miami, Florida." To forfeit something means:

> To lose, in consequence of breach of contract, neglect of duty, or offense, some right, privilege, or property to another or to the State. . . .
>
>  To lose an estate, a franchise, or other property belonging to one, by the act of the law, and as a consequence of some misfeasance, negligence, default, or omission. It is a deprivation (that is, against the will of the losing party), with the property either transferred to another or resumed by the original grantor.

Black's Law Dictionary 650 (6th ed. 1990). Thus, the plain meaning of the District Court's Forfeiture Order was that Pelullo thereupon lost any interest he had in the Miami property.

10

Accordingly, we conclude that, as a result of the Forfeiture Order, Pelullo no longer had any interest in the Miami property at the time he petitioned for bankruptcy protection. The initiation of the bankruptcy proceeding thus could have no effect on the property, including by way of the automatic stay provision. The automatic stay provision and the jurisdiction of the bankruptcy courts extend in general to the bankruptcy estate. See, e.g., 11 U.S.C. S 362(a)(2) (automatic stay applies to "the enforcement . . . against property of the [bankruptcy] estate of a judgment obtained before the commencement of the [bankruptcy] case"); 28 U.S.C. S 1334(e) ("The district court in which a case under Title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."). The bankruptcy estate is comprised of, in pertinent part, "wherever located and by whomever held . . . all legal and equitable interests of the debtor in property as of the commencement of the estate." 11 U.S.C. S 540(1). Since, after the Forfeiture Order was entered, Pelullo had no remaining interest in the Miami property, it did not become part of the bankruptcy estate. Therefore, neither the automatic stay provision nor the bankruptcy court's jurisdiction more generally applied to the property, and the District Court's Protective Orders could not conflict with Pelullo's bankruptcy proceeding and thus were not erroneous.

Given our conclusions set forth above, we need not reach various other issues which the parties have argued at length. As an initial matter, we note that, since the Miami property no longer belonged to Pelullo at the time he filed his bankruptcy petition, the bankruptcy court had no jurisdiction over the property. See 28 U.S.C. S 1334(e). Accordingly, we need not consider which grant of exclusive jurisdiction -- over RICO cases or bankruptcy cases -- takes precedence in this case. Compare 18 U.S.C. S 1963(i) (barring filing of actions in other courts with respect to property subject to forfeiture under RICO) with 28 U.S.C. S 1334(e) (granting bankruptcy court exclusive jurisdiction over property of debtor and bankruptcy estate); cf. Brock v. Morysville Body Works, Inc., 829 F.2d 383, 385-86 (3d Cir. 1987). Similarly, since the S 362(a) automatic stay does not

apply at all, we need not decide whether one of the exceptions thereto set forth in S 362(b) bars its application in this case. Cf. Pennsylvania Dept. of Public Welfare v. Davenport, 495 U.S. 552 (1990) (discussing applicability of S 362(b)(1) "criminal proceeding" exception to automatic stay); James v. Draper (In re James), 940 F.2d 46 (3d Cir. 1991) (discussing S 362(b)(4) & (5) "police power" exceptions to automatic stay).

III.

In summary, we conclude that the order appealed from is an appealable order and that we have jurisdiction to hear Pelullo's appeal. On the merits, we hold that the District Court committed no error in granting temporary and permanent protective orders prohibiting Pelullo from including his Miami residence as an asset in his Chapter 11 proceeding.

Accordingly, the order of the District Court will be affirmed. Costs taxed against the appellant.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit