**In re Charles WOLFSON and Randi Wolfson, Debtors.**

**Andrew M. Thaler, Esq., Plaintiff,**

v.

**The County of Nassau District Attorney and Chase Manhattan Bank, Defendants.**

**Bankruptcy No. 800–83259–288. Adversary No. 800–8253–288.**

United States Bankruptcy Court, E.D. New York.

April 2, 2001.

§ 523(a)(2)(C).

Heller & Rosenberg, PC, Garden City, NY, for debtors.

Flower Medalie & Markowitz, Bay Shore, NY, for trustee.

## MEMORANDUM AND DECISION

STAN BERNSTEIN, Bankruptcy Judge.

### Background

In a complaint [1], filed on July 5, 2000, chapter 7 trustee Andrew M. Thaler (Thal-

---

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the General Reference to the Court under Rule 4 of the General Rules of the United States District Court for the Eastern District of New York. This is a core proceeding under 28 U.S.C.

er or trustee), seeks a determination from this Court that two bank accounts held in escrow by defendant Nassau County District Attorney (NCDA or district attorney) in the names of debtors Charles Wolfson and Randi Wolfson (debtors or debtor-defendants) are property of the bankruptcy estate under 11 U.S.C. section 541 of the Bankruptcy Code and subject to the turnover and fraudulent transfer provisions of sections 542, 543, 548 and 550 of the Code. In a motion for partial summary judgment filed on October 2, 2000, the trustee seeks the turnover of $19,888.96 held in escrow by the NCDA. On November 29, 2000, the NCDA filed a cross-motion for summary judgment. Since it appears from the parties' motion papers that no argument was made concerning the trustee's fraudulent transfer action under section 548, the scope of this Memorandum and Order is limited to the trustee's causes of action under sections 542 and 543 of the Code.

## I. *The civil forfeiture proceeding*

This case arises from the events surrounding the settlement of a civil forfeiture proceeding in connection with a criminal prosecution in the New York state courts. On August 6, 1998, the NCDA commenced a civil forfeiture action by Order of Attachment against the debtors and several co-defendants, seeking to recover $1,250,000.00 in proceeds from an illegal gambling operation allegedly operated by the defendants. On August 7, 1998, the day after the commencement of the forfeiture action, the debtors and their co-defendants were arrested and charged with the felony of Promoting Gambling in the First Degree. On that same day, the Order of Attachment was amended for the limited purpose of adding an additional defendant. Civil forfeiture actions are governed by Article 13–A of the New York Civil Practice Law and Rules (CPLR), which states in relevant part:

§ 1311. Forfeiture actions

1. A civil action may be commenced by the appropriate claiming authority[2] against a criminal defendant to recover the property which constitutes the proceeds of a crime, the substituted proceeds of a crime, an instrumentality of a crime or the real property instrumentality of a crime or to recover a money judgment in an amount equivalent in value to the property which constitutes the proceeds of a crime, the substituted proceeds of a crime, an instrumentality of a crime, or the real property instrumentality of a crime... Any action under this article must be commenced within five years of the commission of the crime and shall be civil, remedial, and in personam in nature and shall not be deemed to be a penalty or criminal forfeiture for any purpose.

Furthermore, section 1312 of Article 13–A makes a number of provisional remedies available to the claiming authority upon the commencement of a forfeiture action, and section 1317 specifically authorizes attachment without notice provided that the claiming authority moves within five days to confirm the order of attachment. The August 7, 1998 Amended Order of Attachment was subsequently confirmed by an undated Order to Show Cause signed by New York State Supreme Court Acting Justice Jerald S. Carter. By letter dated August 17, 1998, defendant Chase Manhattan Bank (Chase) acknowledged receipt of

---

§ 157(b)(2). This Memorandum and Order constitutes Findings of Fact and Conclusions of Law under Fed.R.Civ.P. 52 as made applicable by Fed. R. Bankr.P. 7052.

2. The definition of a "claiming authority" under Article 13–A includes "the district attorney having jurisdiction over the offense", in this case, the NCDA. CPLR § 1310(11).

the Order to Show Cause and identified three accounts in the debtors' names containing a total of $19,909.16.

## II. *The guilty plea and the Stipulation and Order of Settlement*

On October 19, 1999, Charles Wolfson pled guilty to Promoting Gambling in the Second Degree, and Randi Wolfson pled guilty to Promoting Gambling in the First Degree. On January 10, 1999, the debtors and their co-defendants executed a Stipulation and Order of Settlement (Stipulation or Order) under which they agreed to forfeit a total of $86,000.00 to the NCDA under Article 13–A in exchange for discontinuation of the civil forfeiture action on the merits upon receipt of the funds by the NCDA. Stipulation at 5, ¶ 10. The Stipulation explicitly provided for the forfeiture of the funds in the accounts held by defendant Chase in the names of the debtors, and further provided that the debtors were jointly and severally liable with their co-defendants for the remaining balance. Stipulation at 5, ¶ 6. The Stipulation was subsequently "so ordered" by New York State Supreme Court Justice Allan L. Winick on January 31, 2000. By letter dated February 18, 2000, the NCDA requested that defendant Chase liquidate the debtors' bank accounts and turn over the funds to the NCDA in accordance with the Stipulation. The NCDA sent a second notification to Chase by letter dated April 6, 2000.

## III. *The debtors' bankruptcy petition*

On May 16, 2000, the debtors filed a voluntary petition for chapter 7 relief, scheduling $86,000.00 as an unsecured nonpriority claim held by the NCDA. Nearly two months later, on or about July 11, 2000, the NCDA received a check from Chase in the amount of $19,888.27, representing the debtors' attached funds. On July 14, 2000, the NCDA notified the trustee's counsel by letter that the funds were subsequently deposited in an interest bearing escrow account pending the outcome of this adversary proceeding.

## Discussion

The issues presented in these cross-motions for summary judgment are whether the escrow funds are "property of the estate" under section 541(a) and if so, whether those funds constitute a nondischargeable debt under section 523(a)(7).

## I. *The Stipulation and Order of Settlement divested the debtors of their interest in the funds.*

■ In his chief argument, the trustee asserts that defendant Chase was a "custodian" within the meaning of section 101(11)(C) of the Bankruptcy Code at the time the funds were attached by virtue of the August 7, 1998 Amended Order of Attachment and the subsequent Order to Show Cause confirming the Order of Attachment.[3] As a custodian, the trustee reasons, Chase was subject to the turnover provisions of section 543(a) of the Bankruptcy Code requiring a custodian with knowledge of the bankruptcy case to refrain from disbursing property of the debtor. In arguing that Chase violated its duties as a custodian by delivering the attached funds to the NCDA, the trustee, however, ignores the effect of the Stipula-

---

3. Although the trustee to some extent also argues that the attached assets may not literally have been proceeds from the debtors' gambling operations, the civil forfeiture statute does not limit provisional remedies in forfeiture proceedings to assets that can only be linked directly to the alleged crimes. As the New York Court of Appeals has observed, attachment under Article 13–A may be used to "reach any assets of the defendants that could be used to satisfy a potential judgment in the forfeiture action." *Morgenthau v. Citisource, Inc.*, 68 N.Y.2d 211, 220, 508 N.Y.S.2d 152, 500 N.E.2d 850 (1986).

tion and Order of Settlement, which divested the debtors of any interest they held in the funds as of January 31, 2000, the date the Order was signed by Justice Winick. Here, the Stipulation and Order of Settlement provided for the forfeiture of $86,000.00 to the NCDA "under the authority of Article 13–A of the Civil Practice Law and Rules of the State of New York", explicitly including $19,888.97 held in the Chase bank accounts in the names of Charles Wolfson and Randi Livson/Wolfson. Stipulation at 1–3, ¶¶ 1, 4C. Furthermore, in executing the Stipulation the debtor-defendants agreed that they would not contest the allegation that they "engaged in illegal conduct which constituted and satisfied the legal prerequisites for a forfeiture pursuant to C.P.L.R. Article 13–A." Stipulation at 2, ¶ 3.

■ The trustee is correct in arguing that the debtor-defendants retained an interest in the funds at the time they were first attached in accordance with the August 7, 1998 Amended Order of Attachment, since provisional remedies under Article 13–A only "result in a 'freezing' of defendants' assets and not a forfeiture." *Kuriansky v. Bed–Stuy Health Care Corp.*, 135 A.D.2d 160, 525 N.Y.S.2d 225, 237 (N.Y.App.Div.1988). The ultimate conviction of the defendants in the underlying felony prosecution, however, provides the court with the authority to grant the forfeiture of the attached assets, which the Supreme Court in this case did through its January 31, 2000 Stipulation and Order. *Morgenthau v. Citisource, Inc.*, 68 N.Y.2d 211, 219, 508 N.Y.S.2d 152, 500 N.E.2d 850 (1986) (concluding that "[Article 13–A] authorizes the commencement of a forfeiture action against putative 'criminal defendants' who have been indicted but not convicted" and finding it "equally clear that the court may not grant a forfeiture of the seized assets unless there is a subse-

quent conviction in the underlying felony prosecution."). Thus, the Stipulation and Order of Settlement divested the debtors of their interest in the forfeited funds as of January 31, 2000, so when the debtors filed their bankruptcy petition on May 16, 2000, the debtors could no longer assert any interest in those funds.

■ While this precise issue has not been directly addressed in this Circuit, recent case law in the Third Circuit has established that a court forfeiture order acts to divest a debtor-defendant of his interest in forfeited property with the result that the same debtor-defendant cannot assert an interest in the forfeited property in subsequent bankruptcy proceedings. *United States v. Pelullo*, 178 F.3d 196 (3d Cir.1999). In *Pelullo*, the debtor was a criminal defendant who attempted to discharge a district court order forfeiting the debtor's interest in racketeering proceeds and real property in connection with his federal racketeering conviction. In that case, the debtor filed a chapter 11 petition two months after the forfeiture order had been entered by the district court. After concluding that the plain meaning of "to forfeit" established the divestiture of the debtor's prior interest in the property as of the date of the order, the Third Circuit held:

> [W]e conclude that, as a result of the Forfeiture Order, Pelullo no longer had any interest in the Miami property at the time he petitioned for bankruptcy protection. The initiation of the bankruptcy proceeding thus could have no effect on the property, including by way of the automatic stay provision... Since, after the Forfeiture Order was entered, Pelullo had no remaining interest in the Miami property, it did not become part of the bankruptcy estate. Therefore, neither the automatic stay provision nor the bankruptcy court's jur-

isdiction more generally applied to the property...

178 F.3d at 203. Similarly in this case, the debtors' interest in the funds had already been forfeited to the NCDA by operation of the prior Stipulation and Order of Settlement, and therefore did not become part of the debtors' bankruptcy estate when they filed for chapter 7 relief on May 16, 2000.

Whether or not Chase qualified as a custodian at the time of the initial attachment, the debtors' guilty plea to the underlying offenses satisfied the preconditions for the state Supreme Court's later forfeiture order. The forfeiture order in turn "conclusively determine[d] all of the defendant's interest in the forfeited property" as of January 31, 2000. *Id.* at 202. Thus, the forfeited funds did not become property of the bankruptcy estate at the time of the debtors' filing and are therefore not subject to the turnover provisions of sections 542 and 543 of the Bankruptcy Code. The heavy reliance that the trustee places on *U.S. v. Whiting Pools,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), is misplaced, since the January forfeiture order divested the defendants of their interests in the property before their May bankruptcy filing.

## II. Section 523(a)(7) provides that forfeitures are nondischargeable in bankruptcy.

Even if this Court were to assume that the forfeited funds were property of the debtors' estate within the meaning of section 541(a), the funds would still be nondischargeable as a forfeiture within the plain language of section 523(a)(7). Since the United States Supreme Court's decision in *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), holding criminal restitution obligations nondischargeable, courts have routinely barred criminal

defendants from discharging court-ordered restitution, penalties and forfeitures incurred in connection with their criminal activities. In *United States v. Prodan,* 181 B.R. 279 (E.D.Va.1995), a district court held that a criminal defendant who pled guilty to conspiracy to provide illegal gratuities to a public official could not later discharge a restitution order imposed in connection with his plea. The *Prodan* court explained the policy reasons behind its decision:

> Allowing criminal defendants to discharge restitution orders through Chapter 7 proceedings would lead to ludicrous results. It would force prosecutors, both state and federal, to defend criminal judgments before the bankruptcy courts... If a criminal defendant can simply walk from his sentencing hearing before the district court into the bankruptcy court to discharge a portion of that same sentence, restitution orders as criminal sanctions become meaningless.

181 B.R. at 281. *See also, In re Gelb,* 187 B.R. 87, 92 (Bankr.E.D.N.Y.1995) (declaring a $5 million criminal restitution judgment nondischargeable under section 523(a)(7) and stating that "[t]he cases that acknowledge the compensatory goals of restitution but nevertheless find state and federal restitution orders non-dischargeable are legion.") (citations omitted). Although *Kelly* and *Prodan* were decided in the context of criminal proceedings, other courts have found that forfeitures resulting from the civil counterpart of criminal proceedings are similarly nondischargeable under section 523(a)(7). *See, e.g., In re Ott,* 218 B.R. 118, 122 (Bankr.W.D.Wash. 1998) (noting that *Kelly* did not limit the section 523(a)(7) exception to criminal penalties and concluding "[section 523(a)(7)] does not distinguish between civil and

criminal penalties and thus extends to both categories") (citations omitted).

■ Section 523(a)(7) of the Bankruptcy Code provides in relevant part:

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty ...

11 U.S.C. § 523(a)(7). Thus, in order for the funds in this case to be held nondischargeable within the meaning of section 523(a)(7), they must be found to be: 1) for a fine, penalty or forfeiture; 2) payable to and for the benefit of a governmental unit; and 3) not compensation for actual pecuniary loss.

1) *The funds are a "forfeiture payable to and for the benefit of a governmental unit".*

■ At the outset, the proceedings brought against the debtor-defendants under CPLR section 1311(1) and the January 31, 2000, Stipulation and Order of Settlement resulted in a court-ordered forfeiture within the plain language of Article 13–A. And as the Stipulation explicitly provides, the funds were forfeited "to the Nassau County District Attorney's Office under the authority of Article 13–A of the Civil Practice Law and Rules of the State of New York for distribution pursuant to the provisions of said article". Stipulation at 1, ¶ 1. In holding state criminal restitution obligations nondischargeable in *Kelly v. Robinson,* the United States Supreme Court has rejected a narrow reading of the "benefit" prong of the section 523(a)(7) test. In *Kelly,* the defendant pleaded guilty to larceny in state court and afterwards attempted to obtain a bankruptcy discharge of court-ordered restitution made payable to the Connecticut state probation office. The Supreme Court found that the fact that restitution payments were ultimately forwarded to the debtor-defendant's victims did not disqualify the payments from being "for the benefit of a governmental unit", explaining:

Because criminal proceedings focus on the State's interest in rehabilitation and punishment, rather than the victim's desire for compensation, we conclude that restitution orders imposed in such proceedings operate "for the benefit of" the State.

479 U.S. at 53, 107 S.Ct. 353. Under Article 13–A, CPLR section 1349 governs the disposal of forfeited property and directs the property to be disbursed under a priority scheme, beginning with court-ordered satisfaction of outstanding liens and ending with distribution to general funds designated for the purposes of state law enforcement and prosecution. *See* CPLR § 1349(2)(a)-(h). Although the funds forfeited by the Wolfsons may ultimately be distributed to a wide variety of recipients—victims, taxing authorities and law enforcement units—it is undisputable that the forfeiture in this case was "for the benefit of a governmental unit" within the broad reading of section 523(a)(7) in *Kelly.*

2) *The funds are not "compensation for actual pecuniary loss".*

■ Finally, it is necessary to consider whether the forfeiture in this case is exempt from section 523(a)(7) as "compensation for actual pecuniary loss". Concededly, Article 13–A explicitly notes that the section 1311 forfeiture proceeding "shall be civil, remedial, and in personam in nature and shall not be deemed to be a penalty or criminal forfeiture for any purpose". CPLR § 1311(1). However, the mere fact that forfeitures under Article 13–A are not criminal forfeitures is far

from sufficient to establish that they are compensatory. When faced with a similar situation, the Washington bankruptcy court in *In re Ott* found that funds forfeited under a disgorgement order in the civil counterpart to state criminal racketeering proceedings were nondischargeable under section 523(a)(7). In addressing the debtor-defendant's assertion that the civil penalties were assessed to compensate the state government for actual expenses incurred rather than to penalize the defendant, the *Ott* court concluded:

> While some courts have referred to noncompensatory fines as "penal" or "punitive" ... it does not follow that a nonpunitive or remedial sanction is necessarily compensation for actual pecuniary loss. Compensation is only one remedial goal that may be served: another is that of separating the criminal from ill-gotten gain. [citation omitted]. Depriving a criminal of his illicit gain is not the same as compensating the state for actual pecuniary loss.

218 B.R. at 124. The bankruptcy court noted that Arizona's Racketeering Act, based on the federal RICO statute, was intended to " 'remove the profit from organized crime by separating the racketeer from his dishonest gains' ", a purpose which distinguished the forfeiture at issue from being purely compensatory. *Id.* at 123 (citation omitted). In construing the intent behind New York's Article 13–A, the New York Court of Appeals has similarly held, "[t]he legislative purpose sought to be achieved through the enactment of CPLR article 13–A was 'to take the profit out of crime' ". *Morgenthau,* 508 N.Y.S.2d at 154–55, 500 N.E.2d 850 (citing 1984 McKinney's Session Laws of N.Y., at 3627–28).

Unlike a purely civil proceeding, the civil forfeiture authorized by Article 13–A is dependent on and justified by the related criminal proceedings brought concurrently against the same defendants; in fact, the actual forfeiture cannot take place before the defendants' conviction of the predicate offenses. *See In re Hemingway,* 39 B.R. 619, 621 (N.D.N.Y.1983) (concluding from a survey of cases that debts found to be nondischargeable under section 523(a)(7) are invariably "criminal or tax related penalties"). As the *Ott* court noted, there are compelling policy reasons why the civil consequences of criminal activity should be found nondischargeable under section 523(a)(7):

> Nondischargeability of disgorgement of racketeering proceeds is in keeping with the policy behind discharge exceptions in general and 523(a)(7) in particular. The fresh start of a bankruptcy discharge is intended to provide a new beginning for honest but unfortunate debtors ... not racketeers...While *Kelly* involved the dischargeability of criminal restitution and not a civil penalty, the policies enumerated in that case apply equally to the disgorgement at issue here.

218 B.R. at 125. Similarly, since the forfeiture in this case stems from civil proceedings that paralleled the criminal Promotion of Gambling charges to which the debtor-defendants pled guilty, the forfeited funds cannot be considered as mere compensation for actual pecuniary losses. Thus, the funds forfeited under the Stipulation and Order of Settlement satisfy the third prong of the section 523(a)(7) exception to discharge.

Since the forfeited funds in this case qualify as forfeitures payable to and for the benefit of a governmental unit and are not compensation for actual pecuniary loss, this Court finds that such funds, even if considered to be property of the estate under section 541(a), are nondischargeable under section 523(a)(7).

## Conclusion

For these reasons, the trustee's motion for partial summary judgment is DENIED and the NCDA's motion for summary judgment is GRANTED as to the trustee's causes of action under sections 542 and 543 of the Bankruptcy Code.

A separate order has been issued.